UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EXODUS REFUGEE IMMIGRATION, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:15-cv-1858 |
| | ) |
| MIKE PENCE, in his official capacity as | ) |
| Governor of the State of Indiana, | ) |
| JOHN WERNERT, M.D, in his official capacity | ) |
| as the Secretary of the Indiana Family and Social | ) |
| Services Administration, | ) |
| | ) |
| Defendants. | ) |

**Complaint for Declaratory and Injunctive Relief**

**Introduction**

1. Decisions concerning immigration and refugee resettlement are exclusively the province of the federal government, and under the United States Constitution, national-origin or immigration-classification discrimination by a state is subject to strict scrutiny. Yet, Governor Pence has taken the extraordinary step of ordering all state agencies to stop the resettlement of Syrian refugees in the State of Indiana. And, the Indiana Family and Social Services Administration, which is the agency within which is located Indiana's Refugee Resettlement Office and which supervises and dispenses various forms of primarily federally-funded assistance to refugees, is precluded from doing so and has concurred in the Governor's suspension of Indiana resettlement of Syrian refugees  The actions of the Governor and the Family and Social Services Administration violate equal protection and Title VI of the Civil Rights Act of 1964 and are preempted. Appropriate injunctive and declaratory relief should issue.

**Jurisdiction, venue, cause of action**

2.      This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and § 1343.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.      Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

5.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States; under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and as a preemption claim brought pursuant to the decision of the United States Supreme Court in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (holding that a plaintiff presenting a pre-emption claim "presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve" even in the absence of a cause of action under 42 U.S.C. § 1983).  As explained in *Armstrong v. Exceptional Child Ctr., Inc.*, __U.S.__, 135 S.Ct. 1378 (2015), the  courts' equitable power to issue such injunctions plainly extends to claims that sound in preemption, provided that – as is the case here – there is not statutory provision either expressly or implicitly foreclosing the Court from granting the relief Plaintiff seeks.

**Parties**

6.      Exodus Refugee Immigration, Inc., is an Indiana not-for-profit corporation located in Marion County, Indiana.

7.      Mike Pence is the duly elected Governor of the State of Indiana.

8.      John Wernert, M.D. is the duly appointed Secretary of the Indiana Family and Social Services Administration.

**Legal background**

9. The United States Constitution grants the federal government exclusive power over immigration matters.

10. Specifically, Congress is given the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

11. The United States has ratified the 1967 Protocol relating to the Status of Refugees, 19 U.S.T. 6223, which bound the United States to respect Articles 2 through 34 of the 1951 international Convention relating to the Status of Refugees. This binds the United States to a series of international obligations concerning the treatment and resettlement of refugees, including the rights of refugees to choose their place of residence within their host country and to move freely within that country. *See* Art. 26 of the 1951 Convention relating to the Rights of Refugees, 19 U.S.T. 6223.

12. In addition, the Supreme Court has held that the federal government's power to control immigration is inherent in the nation's sovereignty. *See, e.g.*, *Arizona v. United States,* __U.S.__, 132 S.Ct. 2492 (2012). In contrast, "[t]he States enjoy no power with respect to the classification of aliens." *Plyler v. Doe*, 457 U.S. 292, 225 (1982). Moreover, the Court has also held that an alien lawfully admitted in the United States has the right "of entering and abiding in any state in the Union." *Truax v. Raich*, 239 U.S. 33, 39 (1915).

13. Congress has enacted the Immigration and Nationality Act ("INA"), primarily codified under 8 U.S.C. ch. 12., to provide a comprehensive framework for the regulation of immigration. The INA was amended in 1980 by the United States Refugee Act of 1980, Pub. L. Mo. 96-21, to further regulate the admission and resettlement of refugees.

14. The United States Secretary of State is given responsibility over immigration and naturalization matters. 8 U.S.C. § 1104.

15. The INA discusses the powers of the federal government to regulate refugees, who are defined by the INA as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1158(b)(1).

16. The INA, 8 U.S.C. § 1157, provides for the admission of refugees into the United States.

17. The INA provides that the number of refugees annually shall generally be "such number as the President determines, before the beginning of the fiscal year and after appropriate consultations, is justified by humanitarian concerns or is otherwise in the national interest." 8 U.S.C. § 1157(a)(2).

18. Admissions under the above "subsection shall be allocated among refugees of special humanitarian concern to the United States in accordance with a determination made by the President after appropriate consultation." 8 U.S.C. § 1157(a)(3).

19. However, the INA also gives the President the ability to increase the number of refugees admitted for humanitarian concerns:

> If the President determines, after appropriate consultation, that (1) an unforeseen emergency refugee situation exists, (2) the admission of certain refugees in response to the emergency refugee situation is justified by grave humanitarian concerns or is otherwise in the national interest, and (3) the admission to the United State of these refugees cannot be accomplished under subsection (a) of this section, the President may fix a number of refugees to be admitted to the United States during the succeeding period (not to exceed twelve months) in response to the emergency refugee situation and such admissions shall be allocated among refugees of special humanitarian concern to the United States in accordance with

a determination made by the President after the appropriate consultation provided under this subsection.

8 U.S.C. § 1157(b).

20. The INA establishes the Office of Refugee Resettlement, within the Department of Health and Human Services. 8 U.S.C. § 1521

21. The INA authorizes programs for the domestic resettlement of and assistance to refugees and the definition of "refugee" for this purpose includes not only the individual but his or her family. 8 U.S.C. § 1522(a)(10).

22. These programs include funding to states, as well as funding directly to public or private nonprofit agencies, for the purposes of providing resettlement assistance to refugees. 8 U.S.C. § 1522(a), (b); 45 C.F.R. § 400.4, *et seq.* (Grants to States for Refugee Resettlement).

23. The INA does not allow a State to veto placement of a refugee within the State but does provide that federal authorities:

> to the extent practicable and except under . . . unusual circumstances, shall –
>
> (i)   insure that a refugee is not initially placed or resettled in an area highly impacted (as determined under regulations prescribed by the Director after consultation with such agencies and governments) by the presence of refugees or comparable populations unless the refugee has a spouse, parent, sibling, son, or daughter residing in that area,
>
> (ii)  provide for a mechanism whereby representatives of local affiliates of voluntary agencies regularly (not less often than quarterly) meet with representatives of State and local governments to plan and coordinate in advance of their arrival the appropriate placement of refugees among the various States and localities, and
>
> (iii) take into account—
>
>> (I)  the proportion of refugees and comparable entrants in the population in the area,
>>
>> (II) the availability of employment opportunities, affordable housing, and public and private resources (including educational, health care, and mental health services) for refugees in the area,

> (III) the likelihood of refugees placed in the area becoming self-sufficient and free from long-term dependence on public assistance, and
>
> (IV) the secondary migration of refugees to and from the area that is likely to occur.

8 U.S.C. § 1522(a)(2)(C).

24. Additionally, the INA provides that:

> With respect to the location of placement of refugees within a State, the Federal agency administering subsection (b)(1) of this section shall, consistent with such policies and strategies and to the maximum extent possible, take into account recommendations of the State.

8 U.S.C. § 1522(a)(2)(D).

25. States receiving refugee resettlement assistance funds from the federal government must submit a state plan meeting all requirements imposed by 8 U.S.C. § 1521, *et seq*. 45 C.F.R. § 400.4.

26. Federal law provides that such assistance "shall be provided to refugees without regard to race, religion, nationality, sex or political opinion." 8 U.S.C. § 1522(a)(5).

27. Federal law also provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (Title VI).

**Factual allegations**

28. The President of the United States, pursuant to the powers given to him by the INA, has determined, after appropriate consultations with Congress, that "[t]he admission of up to 85,000 refugees to the United States during Fiscal Year (FY) 2016 is justified by humanitarian concerns or is otherwise in the national interest." White House, *Presidential Determination – Presidential Determination on Refugee Admissions for Fiscal Year 2016*, https://www.whitehouse.gov/

the-press-office/2015/09/29/presidential-determination-presidential-determination-refugee-admissions (last visited Nov. 21, 2015).

29. Refugees who have been admitted to the United States and approved for resettlement by the federal government after being investigated include refugees from the country of Syria.

30. The President has announced that the United States would increase the number of Syrian refugees admitted to the United States to at least 10,000 in the 2016 fiscal year that began October 1, 2015. There were less than 2,000 admitted to the United States in fiscal year 2015.

31. The United States State Department Bureau for Populations, Refugees and Migration ("PRM") is the federal office that is responsible for refugee admissions.

32. PRM performs the initial resettlement of refugees through nine national organizations that have cooperative agreements with PRM to provide reception and placement services for refugees approved for resettlement in the United States by the United States government.

33. Once a refugee is approved for resettlement in the United States by the State Department the Voluntary Agencies will meet and review information and records of the refugees and determine where the federally-approved refugees will be resettled.

34. Once this decision is made contact will be made with local agencies that have been approved to work with refugees in the communities where the refugees will be placed.

35. Once approved by the federal government, the refugees are granted lawful admission into the United States, after which they are eligible to become permanent residents and eventually citizens of the United States.

36. The local agencies will receive funding directly from the United States as well as monies from their states to assist the refugees.

37. The refugees are entitled to various forms of assistance including three months of emergency assistance directly from the federal government that also includes money from the federal government directly paid to the local agency for administration costs. Additionally, the refugees are entitled to Temporary Assistance to Needy Families, also known as TANF, an aid program administered by each State that includes federal and state funding; Medicaid, a medical assistance program administered by the states but primarily federally funded; and Supplemental Nutritional Assistance Program, or SNAP, assistance, a program providing access to food that is funded by the United States Department of Agriculture, but is administered by the states.

38. There are also federal employment services and training monies made available to the refugees. These monies are administered by the states and provided to local agencies.

39. Exodus Refugee Immigration is a refugee resettlement agency that receives federally-approved refugees assigned to it. There are two other resettlement agencies in Indiana.

40. In Fiscal Year 2015 Exodus Refugee Immigration worked with 892 refugees in Indiana.

41. It is supposed to receive 890 refugees in fiscal year 2016.

42. Of these 890 refugees, 215 are projected to be from North East/South Asia. This number will largely include Syrian refugees.

43. Indiana receives federal refugee assistance funds from the United States through the federal Office of Refugee Resettlement and has submitted, and has had approved, a plan as required by federal law and regulations and has agreed to abide by all federal requirements regarding refugee resettlement.

44. The Indiana Family and Social Services Administration is the state agency designated to administer Indiana's efforts to resettle refugees and there is the Office of Refugee Programs within the Indiana Family and Social Services Administration.

45. Indiana's Office of Refugee Programs has in the past insured that refugees receive all benefits to which they are entitled and also that Exodus Refugee Immigration and the other agencies in Indiana assisting in the resettlement of refugees receive the appropriate grants and assistance so that the agencies can effectively resettle the refugees.

46. Exodus Refugee Immigration receives money directly from the State of Indiana to assist in refugee employment training, English language education, case management, and mental health services, among other services. This is federal money that is passed through the State of Indiana. Among other things, these monies are used to employ staff at Exodus Refugee Immigration.

47. In addition to the program supervised by the Family and Social Services Administration, the Indiana State Department of Health provides screening, immunization, and other health services to refugees pursuant to a program reserved for refugees. Indiana State Department of Health, *ISDH REFUGEE HEALTH PROGRAM*, http://www.in.gov/isdh/24668.htm (last visited Nov. 21, 2015).

48. Additionally, the Indiana State Department of Health provides funding directly to Exodus Refugee Immigration for Health Promotions to refugees. This is from a federal grant administered by the State.

49. Several months ago Exodus Refugee Immigration was notified that a refugee family from Syria had been approved for placement in Indiana with Exodus Refugee Immigration being assigned to work with the family.

50. As the family was about to be placed in Indiana, Governor Pence, on November 16, 2015, announced that he was suspending resettlement of Syrian refugees in Indiana. His statement indicates, in its entirety:

> In the wake of the horrific attacks in Paris, effective immediately, I am directing all state agencies to suspend the resettlement of additional Syrian refugees in the state of Indiana pending assurances from the federal government that proper security measures have been achieved. Indiana has a long tradition of opening our arms and homes to refugees from around the world but, as governor, my first responsibility is to ensure the safety and security of all Hoosiers. Unless and until the state of Indiana receives assurances that proper security measures are in place, this policy will remain in full force and effect.

Indiana Governor Mike Pence, *Governor Pence Suspends Resettlement of Syrian Refugees in Indiana*, http://www.in.gov/activecalendar/EventList.aspx?view=EventDetails&eventidn=239126&information_id=233816&type=&syndicate=syndicate (last visited Nov. 21, 2015) (Attached as Exhibit 1).

51. Following the Governor's announcement the Family and Social Services Administration notified Exodus Refugee Immigration that it should notify its "national resettlement agency that the scheduled placement for the Syrian family scheduled to arrive this Thursday, November 19, and all subsequent Syrian arrivals be suspended or redirected to another state that is willing to accept Syrian placements until assurances that proper security measures are in place have been provided by the federal government."

52. The Syrian family who was scheduled to come to Indiana was, after the Governor's announcement, diverted to Connecticut where the family has been resettled.

53. Exodus Refugee Immigration had expended both staff time and resources in preparing for the Syrian refugee family who did not come to Indiana. These resources were necessarily diverted from other projects and from assisting other refugees.

54. Exodus Refugee Immigration has been notified that there are additional Syrian refugee families who will be placed with them to resettle in Indiana. Specifically, there are currently 19 Syrians approved for refugee status by the federal government that have been placed with

Exodus Refugee Immigration and who are expected to arrive in Indiana in the next few weeks or months.

55. Exodus Refugee Immigration has been notified that these families will be placed with Exodus Refugee Immigration for resettlement in Indiana despite the Governor's order that State agencies suspend assistance to these refugees.

56. Prior to the placement of these families Exodus Refugee Immigration will have to expend both monies and staffing and other resourced to prepare for them and if the Governor, Family and Social Services Administration, and other state agencies refuse to provide assistance Exodus Refugee Immigration will not have its costs reimbursed.

57. Once these Syrian families are placed here in Indiana, the Governor has indicated that state agencies, including the Family and Social Services Administration, will refuse to assist the refugees.  When this occurs, Exodus Refugee Immigration will be required to expend both additional staff time and organizational resources to make up for the monies and services that will not be provided by the State of Indiana and its agencies to the refugees.

58. Additionally, inasmuch as the State has suspended its refugee settlement efforts regarding Syrian refugees Exodus Refugee Immigration will not receive the employment grant monies from the State of Indiana for the Syrian refugees that it receives for refugees from other countries.

59. The actions of the Governor and the Family and Social Services Administration are causing Exodus Refugee Immigration irreparable harm for which there is no adequate remedy at law.

60. At all times defendants have acted under color of state law.

**Legal claims**

61. Defendants' suspension of the resettlement of Syrian refugees in Indiana, while continuing to allow the resettlement of other refugees, violates the equal protection clause of the United States Constitution.

62. Defendants' suspension of the resettlement of Syrian refugees in Indiana, solely because of their national origin, represents intentional discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

62. Defendants' suspension of the resettlement of Syrian refugees in Indiana is preempted by the Constitution and federal law for multiple reasons, including that it impinges on the exclusively federal authority to regulate immigration and to classify non-citizens; that federal law occupies the field of refugee admission and resettlement; and that it conflicts with the Immigration and Nationality Act and other federal statutes.

**Request for relief**

WHEREFORE, Exodus Refugee Immigration, Inc., requests that this Court:

1. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2. Declare that the actions of defendants in suspending the resettlement of Syrian refugees are unlawful and unconstitutional for the reasons noted above.

3. Enter a preliminary injunction, later to be made permanent, enjoining defendants from taking any actions to suspend, block, or withhold aid from refugees or Exodus Refugee Resettlement, or otherwise deterring or discouraging the resettlement of Syrian refugees in the State of Indiana.

4. Award plaintiff its costs and reasonable attorneys' fees pursuant to 42 U.S.C § 1988.

5. Award all other proper relief.

*s/ Kenneth J. Falk*
Kenneth J. Falk
No. 6777-49

*s/ Gavin M. Rose*


Gavin M. Rose
No. 26565-53

s/ *Jan P. Mensz*
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317-635-4059
Fax: 317-635-4105
kfalk@aclu-in.org
grose@aclu-in.org
jmensz@aclu-in.org


Judy Rabinovitz
Motion to Appear *Pro Hac Vice* to be filed
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004
212-549-2618
fax: 212-549-2654
jrabinovitz@aclu.org

Omar Jadwat
Motion to Appear *Pro Hac Vice* to be filed
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004
212-549-2620
fax: 212-549-2654
ojadwat@aclu.org

Cecillia Wang
Motion to Appear *Pro Hac Vice* to be filed
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
415-343-0775
fax: 415-395-0950
cwang@aclu.org

Attorneys for Plaintiff