UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EXODUS REFUGEE IMMIGRATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-1858-TWP-DKL |
| | ) | |
| MIKE PENCE, in his official capacity as | ) | |
| Governor of the State of Indiana, | ) | |
| JOHN WERNERT, M.D, in his official capacity | ) | |
| as the Secretary of the Indiana Family and Social | ) | |
| Services Administration, | ) | |
| | ) | |
| Defendants. | ) | |

**Declaration of Carleen Miller and Cole Varga**

Carleen Miller and Cole Varga being duly sworn, say that:

1.  Carleen Miller is currently the Executive Director of Exodus Refugee Immigration, Inc.

("Exodus").   Cole Varga is currently the Director of Operations for Exodus.

2.  Carleen Miller is set to leave her position on December 4, 2015 and will go to work for

Church World Service, which is one of the agencies, known as Voluntary Agencies/National

Resettlement Agencies, that work directly with the federal government to place persons

approved for resettlement in the United States as refugees.   Cole Varga will be the acting

Executive Director when Carleen Miller leaves the agency.

3.  Carleen Miller has been Executive Director of Exodus since 2008 and Cole Varga has

been Director of Operations since May 14, 2013.

4.  Exodus is an Indiana not-for-profit corporation.

5.  Exodus is one of three agencies in Indiana that receives federally-approved refugees to

resettle in the state.



6.     The mission of Exodus is to work with refugees – worldwide victims of persecution, injustice and war – to establish self-sufficient lives in freedom and sanctuary for themselves and their families in Indiana.

7.     In fiscal year 2015 it assisted 892 refugees and it is scheduled to receive 890 in the current fiscal year.

8.     Of these 890 refugees, 215 are projected to be from North East / South Asia.   This number will largely be made up of refugees from Syria.

9.     We are aware that the United States State Department's Bureau for Populations, Refugees and Migration ("PRM") is the federal office that determines that refugees may be admitted to the United States.

10.     PRM, in turn works with nine national organizations, known as Voluntary Agencies - that have cooperative agreements with PRM to provide reception and placement services for approved refugees.

11.     Two of these Voluntary Agencies are Church World Service and Episcopal Migration Ministries, otherwise known as "DFMS" for Domestic and Foreign Missionary Society.

12.     We know from working with refugees that the approval process for the federal government, through PRM, to approve refugees is a lengthy one – generally taking at minimum 18 to 24 months before the refugee is allowed to come to the United States.

13.     Once a refugee is approved for resettlement in the United States, the Voluntary Agencies will meet and review information and records of the refugees and determine where the federally-approved refugees will be resettled.

14.     After this decision is made, contact will be made with local agencies that have been approved to work with the refugees in their new communities.

15.     The refugees who are being placed have lawful admission status and they are eligible to become permanent residents after one year and eventually citizens of the United States after five years.

16.     Before the refugees arrive, the local agencies will do necessary work to prepare for their arrival, including obtaining and furnishing a place for the refugee to live, and performing pre-case management work and other services.

17.     The local agency will receive a set amount for each refugee to assist in paying for these efforts through PRM's Reception and Placement Program.

18.     This money comes from the federal government, passed through the Voluntary Agency or Agencies that the local agency works with.

19.     Once the refugees arrive they are entitled to federal monies passed through the states that may include direct monetary aid known as Refugee Cash Assistance ("RCA") or, if the family is eligible, Temporary Assistance for Needy Families ("TANF"), a federal cash assistance program administered by each State; Refugee Medicaid, a medical assistance program administered by the states but federally funded; and Supplemental Nutritional Assistance Program ("SNAP") assistance, a program providing access to food that is funded by the United States Department of Agriculture, but administered by the states.

20.     Federal monies are also available for employment services and training and the refugees are entitled to various health services.

21.     Indiana receives refugee resettlement monies to aid refugees in becoming self-sufficient and integrated into their new communities through the federal Office of Refugee Resettlement. The bulk of the federal money that is ultimately given to refugees or local agencies goes through

the Indiana Family and Social Services Administration that employs Indiana's Refugee Coordinator. The State then pays the money out to local agencies assisting refugees.

22.     Indiana has submitted a state plan agreeing to comply with all federal requirements concerning refugees sent to Indiana.

23.     Both Episcopal Migration Ministries (DFMS) and Church World Services have cooperative agreements with PRM to resettle refugees and we have contracts with both voluntary agencies to provide these services for refugees in the Indianapolis area.

24.     Under the cooperative agreement that Exodus has directly with PRM and the two Voluntary Agencies, Exodus receives a set amount from the federal government, passed through the Voluntary Agencies, for each refugee who is placed to assist with necessary initial settlement costs, including administrative expenses. This is the Reception and Placement program noted above. The money is used to procure places for the refugee family to live, to pay initial living expenses, and to pay for Exodus staff and administrative expenses, among other things.

25.     Additionally, Exodus has a grant agreement with the Family and Social Services Administration to provide refugee employment and social services. (The agreement and its extension are attached as Exhibit 1 and Exhibit 2).

26.     Although the money for this grant comes from the federal government, it is paid to the Family and Social Services Administration which then makes grant reimbursement payments to Exodus.

27.     Exodus uses this money to provide refugee employment services that include, among other things, specific services provided to refugees, Exodus-staff costs, and Exodus-administrative costs.

28.     Additionally, the Indiana State Department of Health receives federal funds to provide health services to the refugees who are assigned to Exodus.  These services include medical screenings, immunization, and other health services.

29.     Exodus also has a grant agreement with the Indiana State Department of Health for a health promotions program for refugees. This program is funded by the federal government and the funds are passed through to Exodus by the State of Indiana. (Exhibit 3).

30.     In August 2015 Exodus was notified by Episcopal Migration Ministries (DFMS) that a refugee family from Syria had been approved for placement in Indiana with Exodus being assigned to work with the family.

31     In anticipation of the family's arrival Exodus expended both resources and staff time to, among other things: procure an apartment for the family, get the apartment ready, and do other work in anticipation of the arrival.

32.     This necessarily diverted both staff time and resources away from Exodus's other projects and families.

33.     Shortly before the family was due to arrive, the Governor of Indiana announced that he was suspending resettlement of Syrian, and only Syrian, refugees in Indiana.

34.     Following the Governor's announcement the Family and Social Services Administration notified Exodus that it should alert its "national resettlement agency that the scheduled placement for the Syrian family scheduled to arrive this Thursday, November 19, and all subsequent Syrian arrivals be suspended or redirected to another state that is willing to accept Syrian placements until assurances that proper security measures are in place have been provided by the federal government." (Exhibit 4).

35.    The Syrian family that was supposed to come to Indiana and work with Exodus was in flight to Indiana but was, instead, diverted at the airport in New York and sent to Connecticut where the family has been resettled.

36    Exodus expended money preparing for the family for which it will receive no federal reimbursement as the family did not settle here. The Reception and Placement monies are not paid until and unless the family is actually placed.

37.    Although this one family did not resettle in Indiana, Exodus is scheduled to receive additional Syrian refugee families.

38.    Exodus has been informed by Episcopal Migration Ministries (DFMS) and Church World Services that there are currently four Syrian refugee cases consisting of 19 persons approved for refugee status by the federal government that have been assigned to Exodus and who are expected to arrive in Indiana in the next few weeks or months.

39.    Exodus will be given approximately two weeks' notice, or less, before the refugees arrive.

40.    Exodus has been notified by the Voluntary Agencies who place refugees with them that despite the Governor's suspension the Syrian refugees, Syrians along with other nationalities will continue to be placed with Exodus for resettlement in Indianapolis.

41.    Exodus has committed to resettling Syrians in 2016.  And, in June of 2015, the State Refugee Coordinator for Indiana acknowledged that Exodus would be resettling Syrian refugees in the State of Indiana. (Exhibit 5).

42.    However, the decision by the Governor to suspend the State's resettlement efforts will be extremely detrimental to Exodus.

43.     For one thing, if the State suspends its participation in the resettlement of refugees from Syria, Exodus will not receive the employment grant monies and the health grant from the State of Indiana for the Syrian refugees that it receives for other refugees from other countries.

44.     This will be very harmful to Exodus, a not-for-profit organization that simply cannot afford this loss of funding without severe negative repercussions on its ability to provide for the families it serves.

45.     These serious repercussions will be greatly magnified when the State refuses to release the federal funding and provide the direct assistance to the refugees to which they are entitled: Refugee Cash Assistance or TANF, SNAP benefits, and Refugee Medicaid.

46.     It will be difficult, if not impossible, for Exodus to make up for the refugees' loss of these monies and services, although it will attempt to do so.

47.     However, this will result in services being taken away from other areas and will put a serious strain on the ability of Exodus to serve its population of refugees from Syria and other countries.

48.     Not only will this jeopardize Exodus's ability to function and fulfill its mission, it will potentially put it in breach of its agreements with its Voluntary Agencies.

49.     Exodus's mission is to serve all refugees who are placed with us, regardless of their place of origin.   However, the actions and threatened actions of the Governor and the Family and Social Services Administration in essence demand that Exodus discriminate against Syrian refugees because of their nationality.   This is directly contrary to everything for which Exodus stands.

**Verification**

We verify, under the penalties of perjury, that the foregoing is true.

Executed on: _____12/1/15_____
                        DATE

_____
Carleen Miller, MA, LMHC, LMFT

_____
Cole Varga

Prepared by:

Kenneth J. Falk
No. 6777-49
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202

**EXHIBIT**
A

**EXECUTIVE DOCUMENT SUMMARY**
State Form 41221 (R10/4-06)
Instructions for completing the EDS and the contract process

**Received**
SEP 30 2013
IDOA Contracts

1. Please read the guidelines on the back of this form.
2. Please type all information.
3. Check all boxes that apply.
4. For amendments / renewals, attach original contract.
5. Attach additional pages if necessary.

| 1. EDS Number: F1-4-49-14-LJ-0515 | 2. Date prepared: 9/17/2013 |
|---|---|

**AGENCY INFORMATION**

14. Name of agency: Family & Social Services Admin
15. Requisition Number:
16. Address: FSSA, Contract Management 402 W WASHINGTON ST RM W353 INDIANAPOLIS, IN 46204

**AGENCY CONTACT INFORMATION**
17. Name: Thompson-Rutledge, Peggy K
18. Telephone #: 317/232-1349
19. E-mail address: Peggy.Thompson@fssa.in.gov

**COURIER INFORMATION**
20. Name: FSSA / COMMAND
21. Telephone #: 317-233-4703
22. E-mail address: Contract.Status@fssa.in.gov

**VENDOR INFORMATION**
23 Vendor ID # 0000057898
24. Name: EXODUS REFUGEE/IMMIGRATION INC
25. Telephone #: (317)921-1836
26. Address: EXODUS REFUGEE IMMIGRATION 1125 BROOKSIDE AVE STE C9 INDIANAPOLIS, IN 46202
27. E-mail address: cmiller@exodusrefugee.org

**3. CONTRACTS & LEASES**
__ Professional/Personal Services
X Grant
__ Lease
__ Attorney
__ MOU
__ QPA
__ Contract for procured Services
__ Maintenance
__ License Agreement
__ Amendment#
__ Renewal #
__ Other

**FISCAL INFORMATION**
4. Account Number: 62130-F5740.572805
5. Account Name: FSSA DHHS Fund
6. Total amount this action: $1,235,000.00
7. New contract total: 1,235,000.00
8. Revenue generated this action: $0.00
9. Revenue generated total contract: $0.00
10. New total amount for each fiscal year:
Year 2014 $926,250.00
Year 2015 $308,750.00
Year $
Year $

28. Is the vendor registered with the Secretary of State? (Out of State Corporations, must be registered) X Yes __ No
29. Primary Vendor: M/WBE/IN-Veteran
Minority: __ Yes X No
Women: __ Yes X No
IN-Veteran: __ Yes X No
30. Primary Vendor Percentages: 100.0 %
31. Sub Vendor: M/WBE/IN-Veteran
Minority: __ Yes X No
Women: __ Yes X No
IN-Veteran: __ Yes X No
32. If yes, list the %: Minority: %, Women: %, IN-Veteran: %

**TIME PERIOD COVERED IN THIS EDS**
11. From (month, day, year): 10/1/2013
12. To (month, day, year): 9/30/2014
13. Method of source selection:
__ Bid/Quotation __ Emergency __ Negotiated
__ RFP# __ X Other (specify) SUBRECIPIE

33. Is there Renewal Language in the document? __ Yes X No
34. Is there a "Termination for Convenience" clause in the document? X Yes __ No

35. Will the attached document involve data processing or telecommunications systems(s)? Yes: IOT or Delegate has signed off on contract

36. Statutory Authority (Cite applicable Indiana or Federal Codes): 45 CFR 400.1, 45 CFR 400.141-400.156

37. Description of work and justification for spending money. (Please give a brief description of the scope of work included in this agreement.)
Grantee as a federally approved provider for employment services to refugees in Indiana that include counseling, job development, job placement, and other social services related to training and employment.

38. Justification of vendor selection and determination of price reasonableness:
Grantee has been approved by the US Department of State to provide refugee services in Indiana. This is one of organizations within the state that at this time have been approved to provide these services.

39. If this contract is submitted late, please explain why. (Required if more than 30 days late.)

| 40. Agency fiscal officer or representative approval | 41. Date Approved 9/17/2013 | 42. Budget agency approval Joseph M Haling | 43. Date Approved 10-4-13 |
| 44. Attorney General's Office approval | 45. Date Approved 11/18/2013 | 46. Agency representative receiving from AG | 47. Date Approved |

74169-000

## INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION
## DIVISION OF FAMILY RESOURCES
## SUB-RECIPIENT GRANT AGREEMENT WITH
## EXODUS REFUGEE/IMMIGRATION, INC.
## EDS # F1-4-49-14-LJ-0515

This Sub-Recipient Grant Agreement (this "Grant Agreement"), entered into by and between Indiana Family and Social Services Administration, Division of Family Resources (the "State") and **Exodus Refugee/Immigration, Inc.** (the "Sub-Recipient Grantee"), is executed pursuant to the terms and conditions set forth herein.  In consideration of those mutual undertakings and covenants, the parties agree as follows:

1. **Purpose of this Grant Agreement; Grant Funds.**

The purpose of this Grant Agreement is to enable the State to award a grant of **$1,235,000.00** to the Grantee for eligible costs of the refugee employment services or project (the "Project") described in **Attachments A** and **B** of this Grant Agreement, which are incorporated fully by reference.  The funds shall be used exclusively in accordance with the provisions contained in this Grant Agreement and in conformance with Indiana Code §12-13-5-2 et. seq. establishing the authority to make this Grant, as well as any rules adopted thereunder.  Funding for this Grant Agreement is provided by the United States Department of Health and Human Services through 8 USC 1521 et seq., (Refugee Social Services Formula Grant) and 45 CFR 400.1 (Targeted Assistance Grant).  The funds received by the Grantee pursuant to this Grant Agreement shall be used only to implement the Project or provide the services in conformance with this Grant Agreement and for no other purpose.

2. **Representations and Warranties of the Grantee.**

  A.  The Grantee expressly represents and warrants to the State that it is statutorily eligible to receive these Grant funds and that the information set forth in its grant application is true, complete and accurate. The Grantee expressly agrees to promptly repay all funds paid to it under this Grant Agreement should it be determined either that it was ineligible to receive the funds, or it made any material misrepresentation on its grant application.

  B.  The Grantee certifies by entering into this Grant Agreement that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible or voluntarily excluded from entering into this Grant Agreement by any federal or state department or agency.  The term "principal" for purposes of this Grant Agreement is defined as an officer, director, owner, partner, key employee or other person with primary management or supervisory responsibilities, or a person who has a critical influence on or substantive control over the operations of the Grantee.

3. **Implementation of and Reporting on the Project.**

   A. The Grantee shall implement and complete the Project in accordance with **Attachment B** and with the plans and specifications contained in its Grant Application, which is on file with the State and is incorporated by reference.  Modification of the Project shall require prior written approval of the State.

   B. The Grantee shall submit to the State written progress reports until the completion of the Project.  These reports shall be submitted on a monthly basis and shall contain such detail of progress or performance on the Project as is requested by the State.

4. **Term.**

This Grant Agreement commences on **October 1, 2013** and shall remain in effect through **September 30, 2014**.  Unless otherwise provided herein, it may be extended or renewed upon the written agreement of the parties and in conformance with IC §5-22-17-4, and as permitted by the state or federal law governing this Grant.

5. **Grant Funding.**

   A. The State shall fund this grant in the amount of **$1,235,000.00**.  The approved Project Budget is set forth as **Attachment A** of this Grant Agreement, attached hereto and incorporated herein.  The Grantee shall not spend more than the amount for each line item in the Project Budget without the prior written consent of the State, nor shall the Project costs funded by this Grant Agreement and those funded by any local and/or private share be changed or modified without the prior written consent of the State.

   B. The disbursement of grant funds to the Grantee shall not be made until all documentary materials required by this Grant Agreement have been received and approved by the State and this Grant Agreement has been fully approved by the State.

6. **Payment of Claims.**

   A. Unless otherwise authorized by statute and agreed to in this Grant Agreement, all payments shall be made 35 days in arrears in conformance with State fiscal policies and procedures and, as required by IC 4-13-2-14.8, by electronic funds transfer to the financial institution designated by the Grantee in writing.  If advance payment of a portion of the grant funds is permitted by statute, and the State agrees to provide such advance payment, it shall be made only upon submission of a proper claim setting out the intended purposes of those funds.  After such funds have been expended, Grantee shall provide State with a reconciliation of those expenditures.

   A. Requests for payment will be processed only upon presentation of a Claim Voucher in the form designated by the State.

   B. If partial payment has been established as a payment point, the State may require evidence furnished by the Grantee that substantial progress has been made toward completion of the Project prior to making the first payment under this Grant.  All payments are subject to the State's determination that the Grantee's performance to

date conforms with the Project as approved, notwithstanding any other provision of this Grant Agreement.

D. Claims shall be submitted to the State within sixty (60) calendar days following the end of the month in which the good, service, deliverable has been provided and/or reimbursable expenses paid.  All final claims and reports must be submitted to the State within sixty (60) calendar days of the expiration of a specific Claim Program ID effective date, after the expiration or termination of this agreement.  Payment for claims submitted after that time may, at the discretion of the State, be denied.

E. Claims must be submitted with accompanying supportive documentation, as designated by the State.  Incomplete claims submitted or claims submitted without supportive documentation will be returned to the Grantee and not processed for payment.  Failure to successfully perform or execute the policies and/or provisions made in this agreement may result in the denial and/or partial payment of claims submitted for reimbursement.

## 7. Project Monitoring by the State.

The State may conduct on-site or off-site monitoring reviews of the Project during the term of this Grant Agreement and for up to ninety (90) days after it expires or is otherwise terminated. The Grantee shall extend its full cooperation and give full access to the Project site and to relevant documentation to the State or its authorized designees for the purpose of determining, among other things:

A. whether Project activities are consistent with those set forth in **Attachment B**, the grant application, and the terms and conditions of the Grant Agreement;

B. the actual expenditure of state, local and/or private funds expended to date on the Project is in conformity with the amounts for each Budget line item as set forth in **Attachment A** and that unpaid costs have been properly accrued;

C. that Grantee is making timely progress with the Project, and that its project management, financial management and control systems, procurement systems and methods, and overall performance are in conformance with the requirements set forth in this Grant Agreement and are fully and accurately reflected in Project reports submitted to the State.

## 8. Audits and Maintenance of Records.

A. Grantee shall submit to an audit of funds paid through this Grant Agreement, and shall make all books, accounting records and other documents available at all reasonable times during the term of this Grant Agreement and for a period of three (3) years after final payment for inspection by the State or its authorized designee.  Copies shall be furnished to the State at no cost.

B. If required by applicable provisions of the Office of Management and Budget Circular A-133 (Audits of States, Local Governments, and Non-Profit Organizations), following the

expiration of this Grant Agreement, the Grantee shall arrange for a financial and compliance audit of funds provided by the State pursuant to this Grant Agreement.  Such audit is to be conducted by an independent public or certified public accountant (or as applicable, the Indiana State Board of Accounts), and performed in accordance with Indiana State Board of Accounts publication entitled "Uniform Compliance Guidelines for Examination of Entities Receiving Financial Assistance from Governmental Sources," and applicable provisions of the Office of Management and Budget Circulars A-133 (Audits of States, Local Governments, and Non-Profit Organizations).  The Grantee is responsible for ensuring that the audit and any management letters are completed and forwarded to the State in accordance with the terms of this Grant Agreement.  Audits conducted pursuant to this paragraph must be submitted no later than nine (9) months following the close of the Grantee's fiscal year.  The Grantee agrees to provide the Indiana State Board of Accounts and the State an original of all financial and compliance audits.  The audit shall be an audit of the actual entity, or distinct portion thereof that is the Grantee, and not of a parent, member, or subsidiary corporation of the Grantee, except to the extent such an expanded audit may be determined by the Indiana State Board of Accounts or the State to be in the best interests of the State.  The audit shall include a statement from the Auditor that the Auditor has reviewed this Grant Agreement and that the Grantee is not out of compliance with the financial aspects of this Grant Agreement.

9. **Compliance with Laws.**

A. The Grantee shall comply with all applicable federal, state and local laws, rules, regulations and ordinances, and all provisions required thereby to be included herein are hereby incorporated by reference.  The enactment or modification of any applicable state or federal statute or the promulgation of rules or regulations thereunder after execution of this Grant Agreement shall be reviewed by the State and the Grantee to determine whether the provisions of this Grant Agreement require formal modification.

B. The Grantee and its agents shall abide by all ethical requirements that apply to persons who have a business relationship with the State as set forth in IC §4-2-6, et seq., IC §4-2-7, et seq., the regulations promulgated thereunder, and Executive Order 04-08, dated April 27, 2004.  If the Grantee is not familiar with these ethical requirements, the Grantee should refer any questions to the Indiana State Ethics Commission, or visit the Inspector General's website at http://www.in.gov/ig/.  If the Grantee or its agents violate any applicable ethical standards, the State may, in its sole discretion, terminate this Grant immediately upon notice to the Grantee.  In addition, the Grantee may be subject to penalties under IC §§ 4-2-6, 4-2-7, 35-44.1-1-4, and under other applicable laws.

C. The Grantee certifies by entering into this Grant Agreement that neither it nor its principal(s) is presently in arrears in payment of taxes, permit fees or other statutory, regulatory or judicially required payments to the State.  The Grantee agrees that any payments currently due to the State may be withheld from payments due to the Grantee.  Additionally, payments may be withheld, delayed, or denied and/or this Grant suspended until the Grantee is current in its payments and has submitted proof of such payment to the State.

D. The Grantee warrants that it has no current, pending or outstanding criminal, civil, or enforcement actions initiated by the State, and agrees that it will immediately notify the State of any such actions.  During the term of such actions, the Grantee agrees that the

State may suspend funding for the Project. If a valid dispute exists as to the Grantee's liability or guilt in any action initiated by the State or its agencies, and the State decides to suspend funding to the Grantee, the Grantee may submit, in writing, a request for review to the Indiana Department of Administration (IDOA). A determination by IDOA shall be binding on the parties. Any disbursements that the State may delay, withhold, deny, or apply under this section shall not be subject to penalty or interest.

E.  The Grantee warrants that the Grantee and any contractors performing work in connection with the Project shall obtain and maintain all required permits, licenses, registrations, and approvals, and shall comply with all health, safety, and environmental statutes, rules, or regulations in the performance of work activities for the State. Failure to do so may be deemed a material breach of this Grant Agreement and grounds for immediate termination and denial of grant opportunities with the State.

F.  The Grantee affirms that, if it is an entity described in IC Title 23, it is properly registered and owes no outstanding reports to the Indiana Secretary of State.

G.  As required by IC §5-22-3-7:
    (1) The Grantee and any principals of the Grantee certify that:
        (A)  the Grantee, except for de minimis and nonsystematic violations, has not violated the terms of:
            (i)   IC §24-4.7 [Telephone Solicitation Of Consumers];
            (ii)  IC §24-5-12 [Telephone Solicitations]; or
            (iii) IC §24-5-14 [Regulation of Automatic Dialing Machines];
        in the previous three hundred sixty-five (365) days, even if IC 24-4.7 is preempted by federal law; and
        (B) the Grantee will not violate the terms of IC §24-4.7 for the duration of this Grant Agreement, even if IC §24-4.7 is preempted by federal law.
    (2) The Grantee and any principals of the Grantee certify that an affiliate or principal of the Grantee and any agent acting on behalf of the Grantee or on behalf of an affiliate or principal of the Grantee, except for de minimis and nonsystematic violations,
        (A) has not violated the terms of IC §24-4.7 in the previous three hundred sixty-five (365) days, even if IC §24-4.7 is preempted by federal law; and
        (B) will not violate the terms of IC §24-4.7 for the duration of this Grant Agreement even if IC §24-4.7 is preempted by federal law.

## 10. Drug-Free Workplace Certification.

This clause is required by Executive Order 90-5 and applies to all individuals and private legal entities who receive grants or contracts from State agencies. This clause was modified in 2005 to apply only to Contractor's employees within the State of Indiana and cannot be further modified, altered or changed. As required by Executive Order No. 90-5, April 12, 1990, issued by the Governor of Indiana, the Grantee hereby covenants and agrees to make a good faith effort to provide and maintain a drug-free workplace. Grantee will give written notice to the State within ten (10) days after receiving actual notice that the Grantee, or an employee of the Grantee in the State of Indiana, has been convicted of a criminal drug violation occurring in the workplace. False certification or violation of the certification may result in sanctions including,

but not limited to, suspension of grant payments, termination of the Grant and/or debarment of grant opportunities with the State of Indiana for up to three (3) years.

In addition to the provisions of the above paragraphs, if the total amount set forth in this Grant Agreement is in excess of $25,000.00, the Grantee certifies and agrees that it will provide a drug-free workplace by:

A.  Publishing and providing to all of its employees a statement notifying them that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the Grantee's workplace and specifying the actions that will be taken against employees for violations of such prohibition; and

B.  Establishing a drug-free awareness program to inform its employees of (1) the dangers of drug abuse in the workplace; (2) the Grantee's policy of maintaining a drug-free workplace; (3) any available drug counseling, rehabilitation, and employee assistance programs; and (4) the penalties that may be imposed upon an employee for drug abuse violations occurring in the workplace; and

C.  Notifying all employees in the statement required by subparagraph (A) above that as a condition of continued employment the employee will (1) abide by the terms of the statement; and (2) notify the Grantee of any criminal drug statute conviction for a violation occurring in the workplace no later than five (5) days after such conviction; and

D.  Notifying in writing the State within ten (10) days after receiving notice from an employee under   subdivision (C)(2) above, or otherwise receiving actual notice of such conviction; and

E.  Within thirty (30) days after receiving notice under subdivision (C)(2) above of a conviction, imposing the following sanctions or remedial measures on any employee who is convicted of drug abuse violations occurring in the workplace: (1) take appropriate personnel action against the employee, up to and including termination; or (2) require such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a federal, state or local health, law enforcement, or other appropriate agency; and

F.  Making a good faith effort to maintain a drug-free workplace through the implementation of subparagraphs (A) through (E) above.

## 11.  Employment Eligibility Verification.

As required by IC §22-5-1.7, the Grantee hereby swears or affirms under the penalties of perjury that:

A.  The Grantee has enrolled and is participating in the E-Verify program;

B.  The Grantee has provided documentation to the State that it has enrolled and is participating in the E-Verify program;

C.  The Grantee does not knowingly employ an unauthorized alien.

D. The Grantee shall require its contractors who perform work under this Grant Agreement to certify to Grantee that the contractor does not knowingly employ or contract with an unauthorized alien and that the contractor has enrolled and is participating in the E-Verify program. The Grantee shall maintain this certification throughout the duration of the term of a contract with a contractor.

The State may terminate for default if the Grantee fails to cure a breach of this provision no later than thirty (30) days after being notified by the State.

## 12. Funding Cancellation.

When the Director of the State Budget Agency makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of this Grant Agreement, it shall be canceled. A determination by the Director of the State Budget Agency that funds are not appropriated or otherwise available to support continuation of performance shall be final and conclusive.

## 13. Governing Law.

This Grant Agreement shall be governed, construed, and enforced in accordance with the laws of the State of Indiana, without regard to its conflict of laws rules. Suit, if any, must be brought in the State of Indiana.

## 14. Information Technology Accessibility Standards.

Any information technology related products or services purchased, used or maintained through this Grant must be compatible with the principles and goals contained in the Electronic and Information Technology Accessibility Standards adopted by the Architectural and Transportation Barriers Compliance Board under Section 508 of the federal Rehabilitation Act of 1973 (29 U.S.C. §794d), as amended. The federal Electronic and Information Technology Accessibility Standards can be found at: http://www.access-board.gov/508.htm.

## 15. Nondiscrimination.

Pursuant to the Indiana Civil Rights Law, specifically including IC §22-9-1-10, and in keeping with the purposes of the federal Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act, the Grantee covenants that it shall not discriminate against any employee or applicant for employment relating to this Grant with respect to the hire, tenure, terms, conditions or privileges of employment or any matter directly or indirectly related to employment, because of the employee or applicant's: race, color, national origin, religion, sex, age, disability, ancestry, status as a veteran, or any other characteristic protected by federal, state, or local law ("Protected Characteristics"). Furthermore, Grantee certifies compliance with applicable federal laws, regulations, and executive orders prohibiting discrimination based on the Protected Characteristics in the provision of services.

The Grantee understands that the State is a recipient of federal funds, and therefore, where applicable, Grantee and any subcontractors shall comply with requisite affirmative action requirements, including reporting, pursuant to 41 CFR Chapter 60, as amended, and Section 202 of Executive Order 11246.

## 16. Notice to Parties.

Whenever any notice, statement or other communication is required under this Grant, it shall be sent by first class mail or via an established courier / delivery service to the following addresses, unless otherwise specifically advised.

    A.  Notices to the State shall be sent to:

        Matthew P. Schomburg, Indiana Refugee Coordinator
        FSSA/DFR Noble County Office
        702 Goodwin Place, Suite A.
        Kendallville, IN 46755-1143

    B.  Notices to the Grantee shall be sent to:

        Carleen Miller
        Exodus Refugee/Immigration, Inc.
        1125 Brookside Avenue, Suite C9
        Indianapolis, IN 46202

## 17.  Order of Precedence.

Any inconsistency or ambiguity in this Grant Agreement shall be resolved by giving precedence in the following order: (1) requirements imposed by applicable federal law or other controlling document described in paragraph 20, below; (2) this Grant Agreement, (3) attachments prepared by the State, (4) attachments prepared by Grantee; (5) Invitation to Apply for Grant; and (6) the Grant Application.

## 18.  Termination for Breach.

    A.  Failure to complete the Project and expend State, local and/or private funds in accordance with this Grant Agreement may be considered a material breach, and shall entitle the State to suspend grant payments, and suspend the Grantee's participation in State grant programs until such time as all material breaches are cured to the State's satisfaction.

    B.  The expenditure of State or federal funds other than in conformance with the Project or the Budget may be deemed a breach.  The Grantee explicitly covenants that it shall promptly repay to the State all funds not spent in conformance with this Grant Agreement.

## 19.  Termination for Convenience.

Unless prohibited by a statute or regulation relating to the award of the grant, this Grant Agreement may be terminated, in whole or in part, by the State whenever, for any reason, the State determines that such termination is in the best interest of the State.  Termination shall be effected by delivery to the Grantee of a Termination Notice, specifying the extent to which such termination becomes effective.  The Grantee shall be compensated for completion of the Project properly done prior to the effective date of termination.  The State will not be liable for work on the Project performed after the effective date of termination.  In no case shall total payment made to the Grantee exceed the original grant.

**20. Federal and State Third-Party Contract Provisions.**

If part of this Grant involves the payment of federal funds, the Grantee and, if applicable, its contractors shall comply with the federal grant / contract provisions attached as **Attachment B** and incorporated fully herein.

**21. Confidentiality, Security and Privacy of Client Personal Information.**

A. Terms used, but otherwise not defined in this Agreement shall have the same meaning as those found in 45 CFR Parts 160, 162, and 164.

B. "HIPAA" means the Health Insurance Portability and Accountability Act of 1996 (sections 1171 through 1179 of the Social Security Act), including any subsequent amendments to such Act.

C. "HIPAA Rules" mean the rules adopted by and promulgated by the US Department of Health and Human Services ("HHS") under HIPAA and other relevant federal laws currently in force or subsequently made, such as the Health Information Technology for Economic and Clinical Heath Act ("HITECH"), as enumerated under 45 CFR Parts 160, 162, and 164, including without limitation any and all additional or modified regulations thereof. Subsets of the HIPAA Rules include:

1) "HIPAA Enforcement Rule" as defined in 45 CFR Part 160;

2) "HIPAA Security Rule" as defined in 45 CFR Part 164, Subparts A and C;

3) "HIPAA Breach Rule" as defined in 45 CFR Part 164, Subparts A and D; and

4) "HIPAA Privacy Rule" as defined in 45 CFR Part 164, Subparts A and E.

D. If Grantee is deemed a Business Associate to the State, Grantee is hereby authorized by the State to create, receive, maintain, and/or transmit Protected Health Information ("PHI") and other Personally Identifiable Information (meaning personal information as collectively defined in IC 4-1-6-1 and IC 4-1-11-3, "PII") on the State's behalf pursuant to and consistent with the Services performed by Grantee under this Agreement.

E. Grantee agrees that as a Business Associate to the State it is obligated to comply with the HIPAA Rules, as such Rules apply to Business Associates, throughout the term of this Agreement and thereafter as may be required by federal law and such compliance will be at Grantee's sole expense. Further:

1) Grantee will not use or further disclose PHI or PII except as expressly permitted by this Agreement or as required by law; provided however, nothing in this Agreement shall be construed to permit Grantee use or disclose PHI in a manner that would violate the provisions of the HIPAA Privacy Rule as such Rule applies to the State

with regard to the Services performed by Grantee under this Agreement or otherwise cause the State to be non-compliant with the HIPAA Privacy Rule.

2) Grantee understands it must fully comply with the HIPAA Security Rule and will employ appropriate and compliant safeguards to reasonably prevent the use or disclosure of PHI and PII other than as permitted by this Agreement or required by the HIPAA Privacy Rule.  Such safeguards will be designed, implemented, operated, and managed by Grantee at Grantee's sole expense and following the Grantee's best professional judgment regarding such safeguards.  Upon the State's reasonable request, Grantee will review such safeguards with the State. Grantee will implement the following HIPAA requirements for any forms of PHI or PII that the Grantee receives, maintains, or transmits on behalf of the State:

    a)  Administrative safeguards under 45 CFR § 164.308

    b)  Physical safeguards under 45 CFR § 164.310

    c)  Technical safeguards under 45 CFR § 164.312

    d)  Policies and procedures and documentation requirements under 45 CFR §164.316

3) Grantee understands that it is subject to the HIPAA Enforcement Rule under which Grantee may be subject to criminal and civil penalties for violations of and non-compliance with the HIPAA Rules.

F.   <u>Improper Disclosure, Security Incident, and Breach Notification</u>.

1)  Grantee understands that it is subject to the HIPAA Breach Rule.

2)  For the purposes of this Agreement, the term Breach has the same meaning as defined in the HIPAA Breach Rule.  The term "Security Incident" shall mean an action or event that has resulted in the improper use or disclosure of PHI or PII in Grantee's safekeeping (in violation of this Agreement and/or in violation of the HIPAA Privacy Rule), the reasonable possibility or suspected possibility that an improper use or disclosure of PHI or PII may have occurred, or circumstances in which PHI or PII has been exposed to an opportunity for improper use or disclosure.

3)  If a Security Incident occurs or if Grantee suspects that a Security Incident may have occurred with respect to PHI and/or PII in Grantee's safekeeping:

    a)  Grantee shall notify the State of the Security Incident within one (1) business day of when Grantee discovered the Security Incident; such notification shall be made to the FSSA Privacy Office in a manner reasonably prescribed by the FSSA Privacy Officer and shall include as much detail as the Grantee reasonably may be able to acquire within the one (1) business day.

b) For the purposes of such Security Incidents, "discovered" and "discovery" shall mean the first day on which such Security Incident is known to the Grantee or, by exercising reasonable diligence, would have been known to the Grantee. Regardless of whether the Grantee failed to exercise reasonable diligence, improperly delaying the notification of discovery beyond the one day requirement, the Grantee will notify the FSSA Privacy Office within one day of gaining actual knowledge of a breach.

c) In collaboration with the FSSA Privacy Office, Grantee shall undertake all commercially reasonable efforts necessary to thoroughly investigate the Security Incident and to provide all results of such investigation to the FSSA Privacy Office, including but not limited to Grantee personnel involved, source and cause of the Security Incident, specific information disclosed, disclosure victims (those whose PHI/PII was disclosed), disclosure recipients, supporting materials, actions taken to mitigate or stop the Security Incident, and similar details.

d) Grantee's investigation must be undertaken expeditiously and completed to the extent that a determination of whether a Breach has occurred can be reasonably made, including the identification of the victims or likely victims, within a reasonable timeframe as mutually agreed upon with the FSSA Privacy Office, from the date of discovery of the Security Incident.  Grantee shall provide details of its investigation to the FSSA Privacy Office on an ongoing basis until the investigation is complete.

e) Grantee and the FSSA Privacy Office will collaborate on the results of Grantee's investigation; the determination as to whether a Breach has occurred rests solely with the FSSA Privacy Office.

f) If it is determined by the FSSA Privacy Office that a Breach has occurred:

   i. Grantee agrees that it shall be responsible for, including all costs with respect to, fulfilling the State's and/or Grantee's obligations for notice to all of the known and suspected victims of the Breach.  Such notice shall comply with the HIPAA Breach Rule notification requirements and/or applicable notification requirements under State law.

   ii. Grantee further agrees that such notification will be made under its name, unless otherwise specified by the FSSA Privacy Office.  Grantee will coordinate its Breach notification efforts with the FSSA Privacy Office; the FSSA Privacy Office will approve Grantee's Breach notification procedures and plans, including the format and content of the notice(s) prior to such notification being made.

iii.  Grantee accepts full responsibility for the Breach and any resulting losses or damages incurred by the State or any victim of the Breach.

iv.  Grantee will undertake all commercially reasonable efforts necessary to mitigate any deleterious effects of the Breach for the known and suspected victims of the Breach.

v.  The State, through the FSSA Privacy Office, will make the appropriate notifications to HHS and/or the applicable State agencies with respect to the Breach, unless the Grantee is directed to do so by the FSSA Privacy Office.

g)  Grantee will undertake commercially reasonable corrective actions to eliminate or minimize to the greatest degree possible the opportunity for an identified Security Incident to reoccur and provide the FSSA Privacy Office with its plans, status updates, and written certification of completion regarding such corrective actions.

G.  Subcontractors.  Grantee agrees that in accordance with the HIPAA Privacy Rule any subcontractors engaged by Grantee (in compliance with this Agreement) that will create, receive, maintain, or transmit State PHI/PII on Grantee's behalf will contractually agree to the same restrictions, conditions, and requirements that apply to Grantee with respect to such PHI/PII.

H.  Access by Individuals to their PHI.  Grantee acknowledges that in accordance with the HIPAA Privacy Rule individuals for whom Grantee has direct possession of their PHI on the State's behalf have the right to inspect and amend their PHI, and have the right for an accounting of uses and disclosures of such PHI, except as otherwise provided therein.  Grantee shall provide such right of inspection, amendment, and accounting of disclosures to such individuals upon reasonable request by the State (or by such individuals if the State directly refers such individuals to Grantee).  In situations in which Grantee does not have direct possession of such PHI, then the State shall be responsible for such inspection, amendment, and accounting of disclosures rights by individuals.

I.  Access to Records.  Grantee shall make available to HHS and/or the State, Grantee's internal practices, books, and records relating to the use and disclosure of PHI and PII provided to Grantee by the State or created, received, maintained, or transmitted by Grantee on the State's behalf.  Grantee shall promptly inform the State by giving notice to the FSSA Privacy Office of any request by HHS (or its designee) for such internal practices, books, and/or records and shall provide the State with copies of any materials or other information made available to HHS.

J.  Return of Protected Health Information.  Upon request by the State or upon termination of this Agreement, Grantee will, at the State's sole option, either return or destroy all copies of any PHI or PII provided to Grantee by the State, including PHI or PII created, received, maintained, or transmitted by Grantee on the State's behalf and Grantee shall warrant in writing that it has returned or destroyed such PHI and/or PII.  Further, upon termination of this agreement Grantee will not retain any copies of any such PHI and PII and shall warrant same in writing.

K.  At the sole discretion of the State, the State may terminate this Agreement for Grantee's material breach of this Section 12.

L.  Grantee agrees to participate in a disaster recovery plan, as appropriate to the Grantee's Services, as determined by the State to be necessary to uphold integral business functions in the event of an unforeseen disaster.

M.  Drug and Alcohol Records.  In the performance of the Services under this Agreement, Grantee may have access to confidential information regarding alcohol and drug abuse patient records.  Grantee agrees that such information is confidential and protected information and promises and assures that any such information, regardless of form, disclosed to Grantee for the purposes of this Agreement will not be disclosed or discussed with others without the prior written consent of the State.  The Grantee and the State will comply with the applicable requirements of 42 CFR Part 2 and any other applicable federal or state law or regulatory requirement concerning such information. The Grantee will report any unauthorized disclosures of such information in compliance with Section 12.

N.  Confidentiality of State Information.  The Grantee understands and agrees that data, materials, and information disclosed to the Grantee may contain confidential and protected information. The Grantee covenants that data, material and information gathered, based upon or disclosed to the Grantee for the purpose of this Agreement, will not be disclosed to or discussed with third parties without the prior written consent of the State.

The parties acknowledge that the services to be performed by Grantee for the State under this Agreement may require or allow access to data, materials, and information containing Social Security numbers maintained by the State in its computer system or other records.  In addition to the covenant made above in this section and pursuant to 10 IAC 5-3-1(4), the Grantee and the State agree to comply with the provisions of IC 4-1-10 and IC 4-1-11.  If any Social Security number(s) is/are disclosed by Grantee, Grantee agrees to pay the cost of the notice of disclosure of a breach of the security of the system in addition to any other claims and expenses for which it is liable under the terms of this Agreement. The Grantee shall report any unauthorized disclosures of Social Security numbers to the FSSA HIPAA Compliance Office within one (1) business day of the date of discovery.

O.  Grantee will indemnify and hold the State harmless from any loss, damage, costs, expense, judgment, sanction or liability, including, but not limited to, attorneys' fees and costs, that the State incurs or is subject to, as a result of a breach of this Section by the Grantee or any subcontractor, agent or person under Grantee's control. In the event a claim is made against the State for any such claim, cause of action, liability, damage, cost or expense, State may, at its sole option: (i) tender the defense to Grantee, who shall provide qualified and competent counsel to represent the State interest at Grantee's expense; or (ii) undertake its own defense, utilizing such professionals as it deems reasonably necessary, holding Grantee responsible for all reasonable costs thereof. In any event, State shall have the sole right to control and approve any settlement or other compromise of any claim brought against it that is covered by this Section.

**22. FSSA Boilerplate Affirmation Clause.**

I swear or affirm under the penalties of perjury that I have not altered, modified or changed the FSSA Boilerplate clauses in any way except for the following clauses which are named below:

21.  Confidentiality, Security and Privacy of Client Personal Information - Added

---

**THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK.**

F1-4-49-14-LJ-0515

## Non-Collusion, Acceptance

The undersigned attests, subject to the penalties for perjury, that the undersigned is the Grantee, or that the undersigned is the properly authorized representative, agent, member or officer of the Grantee.  Further, to the undersigned's knowledge, neither the undersigned nor any other member, employee, representative, agent or officer of the Grantee, directly or indirectly, has entered into or been offered any sum of money or other consideration for the execution of this Grant Agreement other than that which appears upon the face hereof.

**In Witness Whereof,** Grantee and the State have, through their duly authorized representatives, entered into this Grant Agreement.  The parties, having read and understood the foregoing terms of this Grant Agreement, do by their respective signatures dated below hereby agree to the terms hereof.

**Grantee:**
**Exodus Refugee/Immigration, Inc.**

By: _____
Printed Name: _Carleen Miller_
Title: _Executive Director_
Date: _9-20-13_

**State of Indiana Agency:**
**Family and Social Services Administration**
**Division of Family Resources**

By: _____
Lance V. Rhodes
Director
Date: _9/25/2013_

**Department of Administration**

By: _____ (for)
Jessica Robertson
Commissioner
Date: _10/2/13_

**State Budget Agency**

(for) By: _____ (for)
Brian E. Bailey
Director
Date: _10-4-13_

**APPROVED as to Form and Legality:**
**Office of the Attorney General**

By: _____ (for)
Gregory F. Zoeller
Attorney General
Date: _10/18/2013_



| ATTACHMENT DOCUMENT SUMMARY<br>10/02/2013 | ATTACHMENT:<br>AGREEMENT #:<br>AGREEMENT TERM: | A<br>49-14-LJ-0515<br>10/01/2013-09/30/2014 |
|---|---|---|

## VENDOR INFORMATION:

| | |
|---|---|
| **LEGAL NAME:** | EXODUS REFUGEE/IMMIGRATION INC |
| **MAILING ADDRESS:** | 1125 BROOKSIDE AVE., STE C9<br>Indianapolis, IN 46202 |
| **CONTACT NAME:**<br>**EMAIL ADDRESS:** | CARLEEN MILLER<br>cmiller@exodusrefugee.org |
| **TELEPHONE NUMBER:**<br>**FAX NUMBER:** | (317) 921-0836 EXT - 111<br>(317) 921-1992 |
| **DIRECTOR'S NAME:**<br>**TELEPHONE NUMBER:**<br>**FAX NUMBER:** | CARLEEN MILLER<br>(317) 921-0836 EXT - 111<br>(317) 921-1992 |
| **FSSA CONTRACT CONTACT:**<br>**EMAIL ADDRESS:** | Thompson-Rutledge, Peggy (317) 232-1349<br>Peggy.Thompson-Rutledge@fssa.IN.gov |
| **FID/SSN:**<br>**PS Vendor ID:** | XX-XXX0090<br>0000057898 |
| **CHANGE NUMBER:** | ORIG |

## STATUTORY INFORMATION:
45 CFR 400.1
45 CFR 400.141-400.156

## FINANCIAL SUMMARY:

| CLAIM PROG ID | SERVICE CODE | PROGRAM | EFFECTIVE DATES | AWARD AMOUNT |
|---|---|---|---|---|
| 49-14-KJ-0515-01 | 0157 | Targeted Assist | 10/01/2013-06/30/2014 | $288,750.00 |
| 49-14-KJ-0515-02 | 0157 | Targeted Assist | 07/01/2014-09/30/2014 | $96,250.00 |
| 49-14-LJ-0515-01 | 0090 | Refugee Job Dev | 10/01/2013-06/30/2014 | $637,500.00 |
| 49-14-LJ-0515-02 | 0090 | Refugee Job Dev | 07/01/2014-09/30/2014 | $212,500.00 |
| **TOTAL DOLLAR AMOUNT:** | | | | $1,235,000.00 |



| ATTACHMENT DOCUMENT DETAIL<br>10/02/2013 | ATTACHMENT:<br>AGREEMENT #:<br>AGREEMENT TERM: | A<br>49-14-LJ-0515<br>10/01/2013-09/30/2014 |
|---|---|---|

| LEGAL NAME:<br>CLAIM PROGRAM ID:<br>PROGRAM TOTAL: | EXODUS<br>REFUGEE/IMMIGRATION<br>INC<br>49-14-KJ-0515-01<br>288,750.00 | PS VENDOR ID:<br>DUNS #:<br>REGION: | 0000057898<br>877785329<br>Customized |
|---|---|---|---|
| FUND DESCRIPTION:<br><br>FEDERAL YEAR:<br>EFFECTIVE DATES: | Targeted Assistance<br>Program 14<br>2014<br>10/01/2013-06/30/2014 | CFDA NUMBER:<br><br>STATE YEAR:<br>CLOSE OUT DATE: | 93.584<br><br>2014<br>08/29/2014 |

**SERVICE INFORMATION:** 0157 TARGETED ASSISTANCE PROGRAM
**SERVICE EFF DATES:** 10/1/2013-6/30/2014

| COMPONENT | DESCRIPTION | COMPONENT DATES | UNITS | RATE | AWARD AMT |
|---|---|---|---|---|---|
| .01 | ADMINISTRATIVE FEE | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | 0.00 |
| .02 | PERSONNEL COSTS | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | 0.00 |
| .03 | SPACE COSTS | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | 0.00 |
| .04 | MATERIALS & SUPPLIES | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | 0.00 |
| .05 | PHONE & POSTAGE | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | 0.00 |
| .06 | IN-STATE TRAVEL | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | 0.00 |
| .07 | DIRECT SERVICES/TRAINING | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | 0.00 |
| .08 | CONTRACTED SERVICES | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | 0.00 |
| **SERVICE TOTAL:** | | | | | 288,750.00 |

**SPECIAL CONDITIONS / CPID NOTES:**

Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.





| ATTACHMENT DOCUMENT DETAIL 10/02/2013 | | ATTACHMENT: | A |
|---|---|---|---|
| | | AGREEMENT #: | 49-14-LJ-0515 |
| | | AGREEMENT TERM: | 10/01/2013-09/30/2014 |

| LEGAL NAME: | EXODUS | | |
|---|---|---|---|
| CLAIM PROGRAM ID: | REFUGEE/IMMIGRATION INC | | |
| PROGRAM TOTAL: | 49-14-KJ-0515-02 | PS VENDOR ID: | 0000057898 |
| | 96,250.00 | DUNS #: | 877785329 |
| | | REGION: | Customized |
| FUND DESCRIPTION: | Targeted Assistance Program 15 | | |
| FEDERAL YEAR: | 2014 | CFDA NUMBER: | 93.584 |
| EFFECTIVE DATES: | 07/01/2014-09/30/2014 | STATE YEAR: | 2015 |
| | | CLOSE OUT DATE: | 11/29/2014 |

**SERVICE INFORMATION:**
**SERVICE EFF DATES:**

0157  TARGETED ASSISTANCE PROGRAM
7/1/2014-9/30/2014

| COMPONENT DESCRIPTION | | COMPONENT DATES | UNITS | RATE |
|---|---|---|---|---|
| .01 | ADMINISTRATIVE FEE | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .02 | PERSONNEL COSTS | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .03 | SPACE COSTS | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .04 | MATERIALS & SUPPLIES | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .05 | PHONE & POSTAGE | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .06 | IN-STATE TRAVEL | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .07 | DIRECT SERVICES/TRAINING | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .08 | CONTRACTED SERVICES | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |

**SERVICE TOTAL:** 96,250.00

**SPECIAL CONDITIONS / CPID NOTES:**

Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.





| ATTACHMENT DOCUMENT DETAIL 10/02/2013 | ATTACHMENT: | A |
|---|---|---|
| | AGREEMENT #: | 49-14-LJ-0515 |
| | AGREEMENT TERM: | 10/01/2013-09/30/2014 |

| LEGAL NAME: | EXODUS | | |
|---|---|---|---|
| CLAIM PROGRAM ID: | REFUGEE/IMMIGRATION INC | | |
| PROGRAM TOTAL: | 49-14-LJ-0515-01 | PS VENDOR ID: | 0000057898 |
| | 637,500.00 | DUNS #: | 877785329 |
| | | REGION: | Customized |
| FUND DESCRIPTION: | Refugee Job Development 2014 | | |
| | | CFDA NUMBER: | 93.566 |
| FEDERAL YEAR: | 2014 | | |
| EFFECTIVE DATES: | 10/01/2013-06/30/2014 | STATE YEAR: | 2014 |
| | | CLOSE OUT DATE: | 08/29/2014 |

**SERVICE INFORMATION:** 0090  REFUGEE EMPLOYMENT SERVICES
**SERVICE EFF DATES:** 10/1/2013-6/30/2014

| COMPONENT DESCRIPTION | | COMPONENT DATES | UNITS | RATE |
|---|---|---|---|---|
| .15 | Personnel | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .16 | Space Costs | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .17 | Materials & Supplies | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .18 | Telephone & Postage | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .19 | In-State Travel | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .20 | Insurance | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .21 | Professional Service/Consu | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .22 | Direct Services/Training | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .23 | Equipment | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |

**SERVICE TOTAL:** 637,500.00

**SPECIAL CONDITIONS / CPID NOTES:**

Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.



| ATTACHMENT DOCUMENT DETAIL 10/02/2013 | | ATTACHMENT: AGREEMENT #: AGREEMENT TERM: | A 49-14-LJ-0515 10/01/2013-09/30/2014 |
|---|---|---|---|

| LEGAL NAME: CLAIM PROGRAM ID: PROGRAM TOTAL: | EXODUS REFUGEE/IMMIGRATION INC 49-14-LJ-0515-02 212,500.00 | PS VENDOR ID: DUNS #: REGION: | 0000057898 877785329 Customized |
|---|---|---|---|
| FUND DESCRIPTION: FEDERAL YEAR: EFFECTIVE DATES: | Refugee Job Development 2015 2014 07/01/2014-09/30/2014 | CFDA NUMBER: STATE YEAR: CLOSE OUT DATE: | 93.566 2015 11/29/2014 |

| SERVICE INFORMATION: SERVICE EFF DATES: COMPONENT DESCRIPTION | 0090  REFUGEE EMPLOYMENT SERVICES 7/1/2014-9/30/2014 COMPONENT DATES | UNITS | RATE |
|---|---|---|---|
| .15 | Personnel | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .16 | Space Costs | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .17 | Materials & Supplies | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .18 | Telephone & Postage | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .19 | In-State Travel | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .20 | Insurance | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .21 | Professional Service/Consu | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .22 | Direct Services/Training | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |
| .23 | Equipment | 7/01/14-9/30/14 | ACTUAL COST | 1.0000 |

**SERVICE TOTAL:**

212,500.00

**SPECIAL CONDITIONS / CPID NOTES:**

Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.



## ATTACHMENT B

Services provided under this agreement must adhere to the Social Services Manual and to the service components described below.

- Personnel Costs:  estimate the amount of funds that will be used for salaries and wages, and all fringe benefits including payroll taxes, health insurance, and workers compensation.  Please list all positions that will be paid from this program either directly or through cost allocation in the narrative.  Identify each type of cost and the amount in the narrative.

- Space Costs:  estimate the amount of funds that will be used for rent, mortgage, or user fees; utility costs; costs associated with maintenance and repairs.  Please identify the type of costs and the amount in the narrative.

- Materials and Supplies:  estimate the amount of funds that will be used to purchase materials, program supplies, printing costs and publications that will be used directly by the program.  Identify the type of cost and amount in the narrative.

- Telephone and Postage:  estimate the amount of funds that will be used for communication purposes.  Identify the type of cost and amounts in the narrative.

- Travel (In State):  estimate the amount of funds used for in-state travel.  This program does not allow for out of state travel or conference fees.  Identify the type of cost and amounts in the narrative.

- Insurance:  estimate the amount of funds used for insurance cost related to the provision of this program.  This will include general liability, automobile liability, and other program specific liability insurance coverage.  Identify the types and amounts of each policy and the costs allocated to this program.

- Professional Services/ Consultants:  estimate the amount of funds used for professional services and/or consultants for the Job Development Program.  Identify each service, service provider, and amount in the narrative.  This would include cost allocation of audit services, accounting services, legal services, and consultants hired specifically for this program.

- Direct Services/Training Costs:  estimate the amount of funds that will be used for direct client services.  Identify the type and amount of each cost in the narrative.  This will include expenses such as bus passes, driver's education training, English language courses and so forth.  Only courses which are time limited (less than one year) and specific in scope (such as drivers ed or language courses) will be allowed by this program.

- Equipment:  All costs claimed for equipment purchase must have prior written approval from the State.  Approval of equipment purchase requires the submission of a request to purchase, three written bids, and a summary of why the particular bid was chosen.  Purchase may not occur until written approval is received.  Equipment is defined as a cost of $5,000.00 or more.  Grantees are reminded that procurement transactions must comply with OMB Circulars regarding use of federal funds.  Do not show any costs on this line until you are ready to supply the required request and accompanying documentation.



EXHIBIT
B

**EXECUTIVE DOCUMENT SUMMARY**
State Form 41221 (R10/4-08)

Received

SEP 0 9 2015

EK
IDOA Contracts



Instructions for completing the EDS and the Contract process.

1. Please read the guidelines on the back of this form.
2. Please type all information.
3. Check all boxes that apply.
4. For amendments / renewals, attach original contract.
5. Attach additional pages if necessary.

10/30
ML

| **AGENCY INFORMATION** | |
|---|---|
| 14. Name of agency: Family & Social Svcs Admin | 15. Requisition Number: |
| 16. Address: FSSA, Contract Management 402 W WASHINGTON ST RM W353 INDIANAPOLIS, IN 46204 | |

| **AGENCY CONTACT INFORMATION** | |
|---|---|
| 17. Name: Mel Cook | 18. Telephone #: 317/232-1349 |
| 19. E-mail address: melvin.cook@fssa.in.gov | |

| **COURIER INFORMATION** | |
|---|---|
| 20. Name: FSSA / COMMAND | 21. Telephone #: 317-233-4703 |
| 22. E-mail address: Contract.Status@fssa.in.gov | |

| 1. EDS Number: F1-4-49-14-LJ-0516 | 2. Date prepared: 8/12/2015 |
|---|---|

**3. CONTRACTS & LEASES**

| | |
|---|---|
| — Professional/Personal Services | — Contract for procured Services |
| X Grant | — Maintenance |
| — Lease | — License Agreement |
| — Attorney | X Amendment#          3 |
| — MOU | — Renewal # |
| — QPA | — Other |

| **VENDOR INFORMATION** | |
|---|---|
| 23 Vendor ID # 0000057888 | |
| 24. Name: EXODOS REFUGEE/IMMIGRATION INC | 25. Telephone #: (317)921-1836 |
| 26. Address: EXODUS REFUGEE IMMIGRATION 1125 BROOKSIDE AVE STE C9 INDIANAPOLIS, IN 46202 | |
| 27. E-mail address: emiller@exodusrefugee.org | |

**FISCAL INFORMATION**

| 4. Account Number: 62130-F9740.572805 | 5. Account Name: FSSA DHHS Fund |
|---|---|
| 6. Total amount this action: $899,408.00 | 7.New contract total: 2,989,183.51 |
| 8. Revenue generated this action: $0.00 | 9.Revenue generated total contract: $0.00 |

10.New total amount for each fiscal year :

| Year | 2014 | $880,458.23 |
|---|---|---|
| Year | 2015 | 1,003,402.68 |
| Year | 2016 | $902,971.60 |
| Year | 2017 | $202,351.00 |

| 28. Is the vendor registered with the Secretary of State? (Out of State Corporations, must be registered)     X  Yes          No | | |
|---|---|---|
| 29. Primary Vendor: M/WBE/IN-Veteran Minority: ____ Yes  X  No Women: ____ Yes  X  No IN-Veteran: ____ Yes  X  No | | 30. Primary Vendor Percentages 100.0 % |

**TIME PERIOD COVERED IN THIS EDS**

| 11. From (month, day, year): 10/1/2013 | 12. To ( month, day, year ): 9/30/2016 |
|---|---|

| 31. Sub Vendor: M/WBE/IN-Veteran Minority: ____ Yes  X  No Women: ____ Yes  X  No IN-Veteran: ____ Yes  X  No | 32. If yes, list the %: Minority: _____ % Women: _____ % IN- Veteran _____ % |
|---|---|

| 13. Method of vendor selection: ____ Bid/Quotation          ____ Emergency ____ RFP#          X  Other (specify)          ____ Negotiated ____ Special Procurement          SUBRECIPIE |
|---|

| 33. Is there Renewal Language in          X  Yes          No | 34. Is there a "Termination for Convenience" clause in the document?  X  Yes          No |
|---|---|

35. Will the attached document involve data processing or telecommunications system          Yes: IOT or Delegate has signed off on contract

36. Statutory Authority (Cite applicable Indiana or Federal Codes):
45 CFR 400.1, 45 CFR 400.141-400.155

37. Description of work and justification for spending money. (Please give a brief description of the scope of work included in this agreement.)

This amendment is to add time and funds to this grant.

Grantee as a federally approved provider for employment services to refugees in Indiana that include counseling, job development, job placement, and other social services related to training and employment.

38. Justification of vendor selection and determination of price reasonableness:

Grantee has been approved by the US Department of State to provide refugee services in Indiana. This is one of organizations within the state at this time have been approved to provide these services.

RECEIVED

SEP 15 2015

39. If this contract is submitted late, please explain why: (Required if more than 30 days late.)

OAG-ADVISORY

| 40. Agency fiscal officer or representative approv | 41. Date Approved 8/13/2015 | 42. Budget agency approval Joseph M Habig | 43. Date Approved 9-14-15 |
|---|---|---|---|
| 44. Attorney General's Office approval          SWg | 45. Date Approved 9-23-15 | 46. Agency representative receiving from AG | 47. Date Approved |

74169-003

**INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION**
**DIVISION OF FAMILY RESOURCES**
**AMENDMENT NUMBER THREE**
**TO SUB-RECIPIENT GRANT AGREEMENT WITH:**
**EXODUS REFUGEE/IMMIGRATION, INC.**
**EDS NUMBER: F1-4-49-14-LJ-0515**

This is an Amendment to the Sub-recipient Grant Agreement (this "Grant Agreement"), entered into by and between **Indiana Family and Social Services Administration, Division of Family Resources** (the "State") and **Exodus Refugee/Immigration, Inc.** (the "Grantee") dated **October 1, 2013** is executed pursuant to the terms and conditions set forth herein

In consideration of the mutual undertakings and covenants hereinafter set forth, the parties agree as follows:

The purpose of this Amendment is to modify **Paragraph 4 - Term** and **Paragraph 5 - Grant Funding.**

1. **Paragraph 4.  Term** – The term of this Grant shall be increased by **twelve (12)** months and shall remain as having started on **October 1, 2013** and now expiring on **September 30, 2016.**  This Amendment shall start on **October 1, 2015** and shall end on **September 30, 2016.**

2. **Paragraph 5.  Grant Funding** - The **Grant Funding** associated with this Amendment shall be **increased by $809,406.00** for a new total of **$2,989,183.51.**  These funds shall be used exclusively in accordance with the provisions contained in this Grant Agreement and as specified in financial **"Attachment AM3".**  Financial **"Attachment AM2"** shall be superseded and replaced in its entirety by financial **"Attachment AM3"** which is attached hereto and incorporated herein.

**All matters set forth in the original Grant and not affected by this Amendment shall remain in full force and effect.**

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

F1-4-49-14-LJ-0515

## SIGNATURES

### Non-Collusion and Acceptance

The undersigned attests, subject to the penalties for perjury, that the undersigned is the Grantee, or that the undersigned is the properly authorized representative, agent, member or officer of the Grantee. Further, to the undersigned's knowledge, neither the undersigned nor any other member, employee, representative, agent or officer of the Grantee, directly or indirectly, has entered into or been offered any sum of money or other consideration for the execution of this Grant other than that which appears upon the face hereof.

**In Witness Whereof,** Grantee and the State have, through their duly authorized representatives, entered into this Amendment. The parties, having read and understood the foregoing terms of this Amendment, do by their respective signatures dated below agree to the terms thereof.

**Exodus Refugee/Immigration, Inc.**

By: _____

Printed Name: _Carleen Miller_

Title: _Executive Director_

Date: _9/1/15_

**Family and Social Services Administration
Division of Family Resources**

By: _Adriene M Shields_____

Adrienne M. Shields, Director

Date: _8/4/2015_

**Approved by:
Department of Administration**

By: _____ (for)

Jessica Robertson, Commissioner

Date: _9/11/15_

**Approved by:
State Budget Agency**

_Joseph M Haberg_____ (for)

Brian E. Bailey, Director

Date: _9-14-15_

**APPROVED as to Form and Legality:
Office of the Attorney General**

_Susan M. Gard_____ (for)

Gregory F. Zoeller, Attorney General

Date: _9-23-2015_



| **ATTACHMENT DOCUMENT SUMMARY**<br>8/12/2015 | **ATTACHMENT:**<br>**AGREEMENT #:**<br>**AGREEMENT TERM:** | AM3<br>49-14-LJ-0515<br><br>10/01/2013-09/30/2016 |
|---|---|---|

## VENDOR INFORMATION:

| | |
|---|---|
| **LEGAL NAME:** | EXODUS REFUGEE/IMMIGRATION INC |
| **MAILING ADDRESS:** | 1125 BROOKSIDE AVE., STE C9<br>Indianapolis, IN 46202 |
| **CONTACT NAME:**<br>**EMAIL ADDRESS:** | CARLEEN MILLER<br>cmiller@exodusrefugee.org |
| **TELEPHONE NUMBER:**<br>**FAX NUMBER:** | (317) 921-0836 EXT - 111<br>(317) 921-1992 |
| **DIRECTOR'S NAME:**<br>**TELEPHONE NUMBER:**<br>**FAX NUMBER:** | CARLEEN MILLER<br>(317) 921-0836 EXT - 111<br>(317) 921-1992 |
| **FSSA CONTRACT**<br>**CONTACT:**<br>**EMAIL ADDRESS:** | Mel Cook (317) 232-1349<br>Peggy.Thompson-Rutledge@fssa.IN.gov |
| **FID/SSN:**<br>**PS Vendor ID:** | XX-XXX0090<br>0000057898 |
| **CHANGE NUMBER:** | CH5 |

## STATUTORY INFORMATION:

45 CFR 400.1
45 CFR 400.141-400.156

## FINANCIAL SUMMARY:

| CLAIM PROG ID | SERVICE CODE | PROGRAM | EFFECTIVE DATES | AWARD AMOUNT |
|---|---|---|---|---|
| 49-14-KJ-0515-01 | 0157 | Targeted Assist | 10/01/2013-06/30/2014 | $288,750.00 |
| 49-14-KJ-0515-02 | 0157 | Targeted Assist | 07/01/2014-06/30/2015 | $463,117.91 |
| 49-14-KJ-0515-03 | 0157 | Targeted Assist | 07/01/2015-06/30/2016 | $339,382.09 |
| 49-14-KJ-0515-04 | 0157 | Targeted Assist | 07/01/2016-09/30/2016 | $68,750.00 |
| 49-14-LJ-0515-01 | 0090 | Refugee Job Dev | 10/01/2013-06/30/2014 | $591,708.23 |
| 49-14-LJ-0515-02 | 0090 | Refugee Job Dev | 07/01/2014-06/30/2015 | $540,284.77 |
| 49-14-LJ-0515-03 | 0090 | Refugee Job Dev | 07/01/2015-06/30/2016 | $563,589.51 |

 **ATTACHMENT DOCUMENT SUMMARY**
**8/12/2015**

| | |
|---|---|
| **ATTACHMENT:** | AM3 |
| **AGREEMENT #:** | 49-14-LJ-0515 |
| **AGREEMENT TERM:** | |
| | 10/01/2013-09/30/2016 |

**FINANCIAL SUMMARY:**

| CLAIM PROG ID | SERVICE CODE | PROGRAM | EFFECTIVE DATES | AWARD AMOUNT |
|---|---|---|---|---|
| 49-14-LJ-0515-04 | 0090 | Refugee Job Dev | 07/01/2016-09/30/2016 | $133,601.00 |

| | |
|---|---|
| **TOTAL DOLLAR AMOUNT:** | $2,989,183.51 |



**ATTACHMENT DOCUMENT DETAIL**
**8/12/2015**

| | |
|---|---|
| **ATTACHMENT:** | AM3 |
| **AGREEMENT #:** | 49-14-LJ-0515 |
| **AGREEMENT TERM:** | |
| | 10/01/2013-09/30/2016 |

| | | | |
|---|---|---|---|
| **LEGAL NAME:** | EXODUS | | |
| **CLAIM PROGRAM ID:** | REFUGEE/IMMIGRATION | | |
| **PROGRAM TOTAL:** | INC | **PS VENDOR ID:** | 0000057898 |
| | 49-14-KJ-0515-01 | **DUNS #:** | 877785329 |
| | 288,750.00 | **REGION:** | Customized |
| **FUND DESCRIPTION:** | Targeted Assistance | | |
| | Program 14 | **CFDA NUMBER:** | 93.584 |
| **FEDERAL YEAR:** | 2014 | | |
| **EFFECTIVE DATES:** | 10/01/2013-06/30/2014 | **STATE YEAR:** | 2014 |
| | | **CLOSE OUT DATE:** | 08/29/2014 |

**SERVICE INFORMATION:**
**SERVICE EFF DATES:**

**0157 TARGETED ASSISTANCE PROGRAM**
**10/1/2013-6/30/2014**

| COMPONENT DESCRIPTION | | COMPONENT DATES | UNITS | RATE | |
|---|---|---|---|---|---|
| .01 | ADMINISTRATIVE FEE | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | |
| .02 | PERSONNEL COSTS | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | |
| .03 | SPACE COSTS | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | |
| .04 | MATERIALS & SUPPLIES | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | |
| .05 | PHONE & POSTAGE | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | |
| .06 | IN-STATE TRAVEL | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | |
| .07 | DIRECT SERVICES/TRAINING | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | |
| .08 | CONTRACTED SERVICES | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 | |
| **SERVICE TOTAL:** | | | | | 288,750.00 |

**SPECIAL CONDITIONS / CPID NOTES:**

Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.



| ATTACHMENT DOCUMENT DETAIL 8/12/2015 | | ATTACHMENT: | AM3 |
|---|---|---|---|
| | | AGREEMENT #: | 49-14-LJ-0515 |
| | | AGREEMENT TERM: | |
| | | | 10/01/2013-09/30/2016 |

| LEGAL NAME: | EXODUS | | |
|---|---|---|---|
| CLAIM PROGRAM ID: | REFUGEE/IMMIGRATION INC | | |
| PROGRAM TOTAL: | | PS VENDOR ID: | 0000057898 |
| | 49-14-KJ-0515-02 | DUNS #: | 877785329 |
| | 463,117.91 | REGION: | Customized |
| FUND DESCRIPTION: | Targeted Assistance Program 15 | CFDA NUMBER: | 93.584 |
| FEDERAL YEAR: | 2014 | | |
| EFFECTIVE DATES: | 07/01/2014-06/30/2015 | STATE YEAR: | 2015 |
| | | CLOSE OUT DATE: | 08/29/2015 |

**SERVICE INFORMATION:**
**SERVICE EFF DATES:**

**0157  TARGETED ASSISTANCE PROGRAM**
**7/1/2014-6/30/2015**

| COMPONENT DESCRIPTION | | COMPONENT DATES | UNITS | RATE | |
|---|---|---|---|---|---|
| .01 | ADMINISTRATIVE FEE | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 | |
| .02 | PERSONNEL COSTS | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 | |
| .03 | SPACE COSTS | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 | |
| .04 | MATERIALS & SUPPLIES | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 | |
| .05 | PHONE & POSTAGE | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 | |
| .06 | IN-STATE TRAVEL | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 | |
| .07 | DIRECT SERVICES/TRAINING | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 | |
| .08 | CONTRACTED SERVICES | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 | |
| **SERVICE TOTAL:** | | | | | 463,117.91 |

**SPECIAL CONDITIONS / CPID NOTES:**

Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.



| **ATTACHMENT DOCUMENT DETAIL**<br>**8/12/2015** | **ATTACHMENT:**<br>**AGREEMENT #:**<br>**AGREEMENT TERM:** | AM3<br>49-14-LJ-0515 |
|---|---|---|
| | | 10/01/2013-09/30/2016 |

| **LEGAL NAME:** | EXODUS | | |
|---|---|---|---|
| **CLAIM PROGRAM ID:** | REFUGEE/IMMIGRATION | | |
| **PROGRAM TOTAL:** | INC | **PS VENDOR ID:** | 0000057898 |
| | 49-14-KJ-0515-03 | **DUNS #:** | 877785329 |
| | 339,382.09 | **REGION:** | STATEWIDE |
| **FUND DESCRIPTION:** | Targeted Assistance | | |
| | Program 16 | **CFDA NUMBER:** | 93.584 |
| **FEDERAL YEAR:** | 2015 | | |
| **EFFECTIVE DATES:** | 07/01/2015-06/30/2016 | **STATE YEAR:** | 2016 |
| | | **CLOSE OUT DATE:** | 08/29/2016 |

**SERVICE INFORMATION:**
**SERVICE EFF DATES:**

**0157  TARGETED ASSISTANCE PROGRAM**
**7/1/2015-6/30/2016**

| COMPONENT | DESCRIPTION | COMPONENT DATES | UNITS | RATE | |
|---|---|---|---|---|---|
| .01 | ADMINISTRATIVE FEE | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 | |
| .02 | PERSONNEL COSTS | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 | |
| .03 | SPACE COSTS | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 | |
| .04 | MATERIALS & SUPPLIES | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 | |
| .05 | PHONE & POSTAGE | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 | |
| .06 | IN-STATE TRAVEL | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 | |
| .07 | DIRECT SERVICES/TRAINING | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 | |
| .08 | CONTRACTED SERVICES | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 | |
| **SERVICE TOTAL:** | | | | | 339,382.09 |

 **ATTACHMENT DOCUMENT DETAIL**
**8/12/2015**

| | |
|---|---|
| **ATTACHMENT:** | AM3 |
| **AGREEMENT #:** | 49-14-LJ-0515 |
| **AGREEMENT TERM:** | |
| | 10/01/2013-09/30/2016 |

| | | | |
|---|---|---|---|
| **LEGAL NAME:** | EXODUS | | |
| **CLAIM PROGRAM ID:** | REFUGEE/IMMIGRATION INC | **PS VENDOR ID:** | 0000057898 |
| **PROGRAM TOTAL:** | 49-14-KJ-0515-04 | **DUNS #:** | 877785329 |
| | 68,750.00 | **REGION:** | STATEWIDE |
| **FUND DESCRIPTION:** | Targeted Assistance Program 17 | **CFDA NUMBER:** | 93.584 |
| **FEDERAL YEAR:** | 2016 | | |
| **EFFECTIVE DATES:** | 07/01/2016-09/30/2016 | **STATE YEAR:** | 2017 |
| | | **CLOSE OUT DATE:** | 11/29/2016 |

**SERVICE INFORMATION:**
**0157  TARGETED ASSISTANCE PROGRAM**
**SERVICE EFF DATES:**  7/1/2016-9/30/2016

| COMPONENT | DESCRIPTION | COMPONENT DATES | UNITS | RATE |
|---|---|---|---|---|
| .01 | ADMINISTRATIVE FEE | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .02 | PERSONNEL COSTS | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .03 | SPACE COSTS | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .04 | MATERIALS & SUPPLIES | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .05 | PHONE & POSTAGE | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .06 | IN-STATE TRAVEL | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .07 | DIRECT SERVICES/TRAINING | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .08 | CONTRACTED SERVICES | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |

**SERVICE TOTAL:**                                                                68,750.00

**SPECIAL CONDITIONS / CPID NOTES:**
Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.



| **ATTACHMENT DOCUMENT DETAIL** 8/12/2015 | **ATTACHMENT:** **AGREEMENT #:** **AGREEMENT TERM:** | AM3 49-14-LJ-0515 10/01/2013-09/30/2016 |
|---|---|---|

| **LEGAL NAME:** **CLAIM PROGRAM ID:** **PROGRAM TOTAL:** | EXODUS REFUGEE/IMMIGRATION INC 49-14-LJ-0515-01 591,708.23 | **PS VENDOR ID:** **DUNS #:** **REGION:** | 0000057898 877785329 Customized |
|---|---|---|---|
| **FUND DESCRIPTION:** **FEDERAL YEAR:** **EFFECTIVE DATES:** | Refugee Job Development 2014 2014 10/01/2013-06/30/2014 | **CFDA NUMBER:** **STATE YEAR:** **CLOSE OUT DATE:** | 93.566 2014 08/29/2014 |

**SERVICE INFORMATION:**
**SERVICE EFF DATES:**

**0090  REFUGEE EMPLOYMENT SERVICES**
**10/1/2013-6/30/2014**

| COMPONENT DESCRIPTION | | COMPONENT DATES | UNITS | RATE |
|---|---|---|---|---|
| .15 | Personnel | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .16 | Space Costs | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .17 | Materials & Supplies | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .18 | Telephone & Postage | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .19 | In-State Travel | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .20 | Insurance | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .21 | Professional Service/Consu | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .22 | Direct Services/Training | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |
| .23 | Equipment | 10/01/13-6/30/14 | ACTUAL COST | 1.0000 |

**SERVICE TOTAL:**                                                                591,708.23

**SPECIAL CONDITIONS / CPID NOTES:**
Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.



| ATTACHMENT DOCUMENT DETAIL 8/12/2015 | ATTACHMENT: AGREEMENT #: AGREEMENT TERM: | AM3 49-14-LJ-0515 |
|---|---|---|
| | | 10/01/2013-09/30/2016 |

| LEGAL NAME: | EXODUS | | |
|---|---|---|---|
| CLAIM PROGRAM ID: | REFUGEE/IMMIGRATION INC | | |
| PROGRAM TOTAL: | 49-14-LJ-0515-02 | PS VENDOR ID: | 0000057898 |
| | 540,284.77 | DUNS #: | 877785329 |
| | | REGION: | Customized |
| FUND DESCRIPTION: | Refugee Job Development 2015 | CFDA NUMBER: | 93.566 |
| FEDERAL YEAR: | 2014 | STATE YEAR: | 2015 |
| EFFECTIVE DATES: | 07/01/2014-06/30/2015 | CLOSE OUT DATE: | 08/29/2015 |

**SERVICE INFORMATION:**
**SERVICE EFF DATES:**

| COMPONENT DESCRIPTION | 0090  REFUGEE EMPLOYMENT SERVICES 7/1/2014-6/30/2015 COMPONENT DATES | UNITS | RATE |
|---|---|---|---|
| .15 Personnel | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |
| .16 Space Costs | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |
| .17 Materials & Supplies | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |
| .18 Telephone & Postage | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |
| .19 In-State Travel | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |
| .20 Insurance | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |
| .21 Professional Service/Consu | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |
| .22 Direct Services/Training | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |
| .23 Equipment | 7/01/14-6/30/15 | ACTUAL COST | 1.0000 |

**SERVICE TOTAL:** 540,284.77

**SPECIAL CONDITIONS / CPID NOTES:**
Counties served include; Hamilton, Hendricks, Johnson, Marion & Monroe.



| **ATTACHMENT DOCUMENT DETAIL**<br>**8/12/2015** | **ATTACHMENT:**<br>**AGREEMENT #:**<br>**AGREEMENT TERM:** | AM3<br>49-14-LJ-0515<br><br>10/01/2013-09/30/2016 |
| --- | --- | --- |

| **LEGAL NAME:**<br>**CLAIM PROGRAM ID:**<br>**PROGRAM TOTAL:** | EXODUS<br>REFUGEE/IMMIGRATION<br>INC<br>49-14-LJ-0515-03<br>563,589.51 | **PS VENDOR ID:**<br>**DUNS #:**<br>**REGION:** | 0000057898<br>877785329<br>STATEWIDE |
| --- | --- | --- | --- |
| **FUND DESCRIPTION:**<br><br>**FEDERAL YEAR:**<br>**EFFECTIVE DATES:** | Refugee Job<br>Development 2016<br>2015<br>07/01/2015-06/30/2016 | **CFDA NUMBER:**<br><br>**STATE YEAR:**<br>**CLOSE OUT DATE:** | 93.566<br><br>2016<br>08/29/2016 |

**SERVICE INFORMATION:**
**SERVICE EFF DATES:**
**COMPONENT DESCRIPTION**

**0090  REFUGEE EMPLOYMENT SERVICES**
**7/1/2015-6/30/2016**

| COMPONENT DESCRIPTION | COMPONENT DATES | UNITS | RATE |
| --- | --- | --- | --- |
| .15 Personnel | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |
| .16 Space Costs | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |
| .17 Materials & Supplies | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |
| .18 Telephone & Postage | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |
| .19 In-State Travel | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |
| .20 Insurance | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |
| .21 Professional Service/Consu | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |
| .22 Direct Services/Training | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |
| .23 Equipment | 7/01/15-6/30/16 | ACTUAL COST | 1.0000 |

**SERVICE TOTAL:**

563,589.51



| ATTACHMENT DOCUMENT DETAIL | ATTACHMENT: | AM3 |
|---|---|---|
| 8/12/2015 | AGREEMENT #: | 49-14-LJ-0515 |
| | AGREEMENT TERM: | |
| | | 10/01/2013-09/30/2016 |

| LEGAL NAME: | EXODUS | | |
|---|---|---|---|
| CLAIM PROGRAM ID: | REFUGEE/IMMIGRATION | | |
| PROGRAM TOTAL: | INC | PS VENDOR ID: | 0000057898 |
| | 49-14-LJ-0515-04 | DUNS #: | 877785329 |
| | 133,601.00 | REGION: | STATEWIDE |
| FUND DESCRIPTION: | Refugee Job | | |
| | Development 2017 | CFDA NUMBER: | 93.566 |
| FEDERAL YEAR: | 2016 | | |
| EFFECTIVE DATES: | 07/01/2016-09/30/2016 | STATE YEAR: | 2017 |
| | | CLOSE OUT DATE: | 11/29/2016 |

**0090  REFUGEE EMPLOYMENT**

| SERVICE INFORMATION: | SERVICES | | | |
|---|---|---|---|---|
| SERVICE EFF DATES: | 7/1/2016-9/30/2016 | | | |
| COMPONENT DESCRIPTION | COMPONENT DATES | UNITS | RATE | |
| .15 | Personnel | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .16 | Space Costs | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .17 | Materials & Supplies | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .18 | Telephone & Postage | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .19 | In-State Travel | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .20 | Insurance | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .21 | Professional Service/Consu | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .22 | Direct Services/Training | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| .23 | Equipment | 7/01/16-9/30/16 | ACTUAL COST | 1.0000 |
| **SERVICE TOTAL:** | | | | 133,601.00 |



**Purchase Order**
**Grant**
**State of Indiana**
Approved by Encompass Leadership Team – 2011

| Order # | Date | Required Date | Page |
|---|---|---|---|
| 0016523615 | 10/19/2015 | 11/18/2015 | 1 of 1 |

Requisition Number: 0000030412
Vendor ID: 0000057898 REMIT001
Agency: 00400 Health
Pay Terms: 35 Days in Arrears
Fund/Object/Center: 61910/ 573100   / 940000

Vendor  0000057898  REMIT001   1

| | | |
|---|---|---|
| **Remit to** | EXODUS REFUGEE/IMMIGRATION INC<br>4550 CENTRAL AVE<br>INDIANAPOLIS IN 46205 | **Ship To**  State Department of Health<br>Section 2-C<br>2 N MERIDIAN ST<br>INDIANAPOLIS IN 46204 |
| **Vendor Name Address** | EXODUS REFUGEE/IMMIGRATION INC<br>4550 CENTRAL AVE<br>INDIANAPOLIS IN 46205 | **Bill To**  Health<br>State Department of Health<br>Section 2-C<br>2 N MERIDIAN ST<br>INDIANAPOLIS IN 46204 |
| **Vendor Contact** | Name:<br>eMail:<br>Phone: | **Buyer**  Name: Seth C Greathouse - 00400<br>eMail:  SGreathouse@isdh.IN.gov |

### Purchase Order Line Details

| Item No | Description | (FOB Destination) | Qty Ordered | Qty Recd | UOM | Unit Price | Extended Amt |
|---|---|---|---|---|---|---|---|
| 1- 1 | Personnel | | 1.0000 | | EA | 45,416.0000 | 45,416.00 |
| | Contract ID: | 00000000000000000000014562 | Contract Line: 1 | Release: | 1 | | |
| 2- 1 | Fringe | | 1.0000 | | EA | 11,350.0000 | 11,350.00 |
| | Contract ID: | 00000000000000000000014562 | Contract Line: 2 | Release: | 2 | | |
| 3- 1 | Supplies | | 1.0000 | | EA | 600.0000 | 600.00 |
| | Contract ID: | 00000000000000000000014562 | Contract Line: 3 | Release: | 3 | | |
| 4- 1 | Transportation | | 1.0000 | | EA | 1,500.0000 | 1,500.00 |
| | Contract ID: | 00000000000000000000014562 | Contract Line: 4 | Release: | 4 | | |
| 5- 1 | Other | | 1.0000 | | EA | 4,000.0000 | 4,000.00 |
| | Contract ID: | 00000000000000000000014562 | Contract Line: 5 | Release: | 5 | | |

Deliveries acceptable only between 8:30 AM and 4:00 PM, Monday through Friday

### Units of Measure, Handling, Totals, Signatures

The following UN/CEFACT Unit of Measure
Common Codes are used in this document:
EA     Each

**This area left blank**

**Total PO Amt.   $      62,866.00**

| Indiana Department of Administration Authorized Signatory | CONFIRMATION OF RECEIPT |
|---|---|
| | I certify that the items listed above were received.  All commodities appeared to conform to specifications and showed no patent defects, except as otherwise noted. |
| *Kathy Gleason* | Signature of State Employee Receiver | Date Signed(Month/Day/Year) |

FUNDING ENCUMBERED BY THE AUDITOR OF STATE
I certify that there is sufficient unencumbered balance in the above account to cover the amount of this order, and that funds have been set aside for payment thereof.



Michael R. Pence, Governor
State of Indiana

*Division of Family Resources*
402 W. WASHINGTON STREET, ROOM W392
INDIANAPOLIS, IN 46204-2747

November 17, 2015

Ms. Carleen Miller
Executive Director
Exodus Refugee Immigration Inc.
1125 Brookside Avenue, Suite C9
Indianapolis, IN 46202

Dear Carleen,

The Refugee Resettlement Office of the Indiana Family and Social Services Administration, Division of Family Resources, is proud of its longstanding relationship with our National Resettlement Agency partners. Our programs have been mentioned as models for the entire nation through the tireless dedication of Exodus and Catholic Charities staff to work in conjunction with state and local government, supportive agency partners, and volunteers. We have achieved this great success together by carefully considering what is best, for not only the refugees coming to Indiana, but their neighbors and communities as well.

Governor Pence issued a statement Monday citing his first responsibility as Governor is to ensure the safety and security of all Hoosiers. In his statement, the Governor directed all state agencies to suspend the resettlement of additional Syrian refugees in the State of Indiana pending assurances from the federal government that proper security measures have been achieved. We would ask that you notify your national resettlement agency that the scheduled placement for the Syrian family scheduled to arrive this Thursday, November 19, and all subsequent Syrian arrivals be suspended or redirected to another state that is willing to accept Syrian placements until assurances that proper security measures are in place have been provided by the federal government.

Should you have any questions or need additional information, please feel free to contact me at 317-234-2373 or Adrienne.shields@fssa.in.gov

Sincerely,

Adrienne Shields
Director
FSSA Division of Family Resources

PLAINTIFF'S
EXHIBIT

D





**EXODUS**
**REFUGEE**
**IMMIGRATION INC**



PLAINTIFF's
**EXHIBIT**
**E**

*1125 Brookside Avenue, Suite C2*
*Indianapolis, Indiana 46202*
*(317) 921-0836 • Fax (317) 921-1992*

June 6, 2015

*An affiliate of:*



*Episcopal Migration Ministries*



*Church World Service*

*In participation with:*

*American Baptist Churches USA*

*Christian Church (Disciples of Christ)*

*Christian Reformed Church in North America*

*The Episcopal Church*

*Presbyterian Church (USA)*

*Reformed Church in America*

*United Church of Christ*

*United Methodist Church*

Indianapolis Indiana
Exodus Refugee Immigration Inc.
Carleen Miller, Executive Director
317-921-0836
cmiller@exodusrefugee.org

Indiana
Matthew P. Schomburg, State Refugee Coordinator
(260) 599-0120
matthew.schomburg@fssa.in.gov

Quarterly Community Consultation held May 20, 2015

Total number of refugees for FY 2016 Discussed:  440 Projected to be resettled through Episcopal Migration Ministries and 450 Projected to be resettled through Church World Service. Total for Exodus 890.

Primary nationalities projected to be resettled in FY 2016 include: Afghanistan, Bhutan, Burma, China, Cuba, Democratic Republic of Congo, El Salvador, Eritrea, Ethiopia, Guatemala, Honduras, Iraq, Iran, Somalia, Sudan, Syria. In addition, small numbers of other nationalities may also be resettled.

It is understood by both parties that the numbers of refugees discussed above, both in total and by case type, are the proposed number of refugees on this date.  This number and case type breakdown can and may change throughout the year, either increasing or decreasing.  This form is solely to record that a conversation of this depth has occurred, and both parties agree to the above numbers as of this date.

Additionally, both parties signing understand the "10% Rule," whereby a resettlement affiliate may exceed its final approved proposal number from PRM by 10% without the need to submit and amended abstract to PRM or the state refugee coordinator.  Parties agree to make efforts to communicate if this may occur.

[√] By checking this box the State Refugee Coordinator affirms that the State Refugee Health Coordinator was included, or that their input was solicited, as part of the above referenced conversation.  This includes a conversation about common medical issues that the incoming populations may have.

_____    6/22/15
Resettlement Agency Contact    Date

_____    6-23-15
State Refugee Coordinator    Date