UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

**Exodus Refugee Immigration, Inc.,**          No. 1:15-cv-01858-TWP-DKL

    Plaintiff,

        v.

**Mike Pence,** in his official capacity as
Governor of the State of Indiana, and
**John Wernert,** in his official capacity as
the Secretary of the Indiana Family and
Social Services Administration**,**

    Defendants.

## Nonparty Episcopal Migration Ministries' Petition for Fees

Nonparty Episcopal Migration Ministries,[1] respectfully requests the Court to order Defendants Mike Pence and John Wernert (collectively referred to as "the State") to pay Episcopal Migration Ministries' attorney fees incurred in responding to the State's subpoena and request for production under Federal Rule of Civil Procedure 45(d)(2)(B)(ii). Responding to the Subpoena imposed significant legal costs on Episcopal Migration Ministries. As a result, Federal Rule of Civil Procedure 45 entitles Episcopal Migration Ministries to legal costs.

---

[1] Episcopal Migration Ministries is the refugee resettlement service of the Episcopal Church, which is incorporated in New York as The Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America. The Episcopal Church is a not-for-profit religious organization with a group exemption recognized by the Internal Revenue Service.

| Ex. No. | TABLE OF EXHIBITS |
|---|---|
| | Description |
| 1 | Subpoena duces tecum and Nonarty Request for Production, Dec. 11, 2015 |
| 2 | Letter from George M. Plews, Plews Shadley Racher & Braun LLP, to Jefferson S. Garn, Deputy Att'y Gen., Office of the Indiana Att'y Gen. (Dec. 18, 2015) |
| 3 | Letter from George M. Plews, Plews Shadley Racher & Braun LLP, to Jefferson Garn, Deputy Att'y Gen., Office of the Indiana Att'y Gen. (Jan. 14, 2016) |
| 4 | Letter from Jefferson Garn, Deputy Att'y Gen., Office of the Indiana Att'y Gen., to George M. Plews, Plews Shadley Racher & Braun LLP (Jan. 26, 2016) |
| 5 | Letter from George M. Plews, Plews Shadley Racher & Braun LLP, to Jefferson Garn, Deputy Att'y Gen., Office of the Ind. Att'y Gen. (Jan. 29, 2016) |
| 6 | Letter from Josh S. Tatum, Plews Shadley Racher & Braun LLP, to Jefferson Garn, Deputy Att'y Gen., Office of the Ind. Att'y Gen. (Apr. 1, 2016) |
| 7 | Letter from Jefferson Garn, Deputy Att'y Gen., Office of the Ind. Att'y Gen. (Apr. 4, 2016) |
| 8 | Invoice for work done by Plews Shadley Racher & Braun LLP on behalf of Episcopal Migration Ministries in responding to the Subpoena |

## BACKGROUND

This case involves Plaintiff Exodus Refugee Immigration, Inc.'s challenge to the State's suspension of resettlement of any refugees from Syria. This Court granted Exodus's motion for preliminary injunction (ECF No. 6) on February 29, 2016. (ECF No. 70.) The case is currently on appeal from that order at the Seventh Circuit, where Exodus's Appellee's Brief is due May 9, 2016.

On December 11, 2015, the State issued a Subpoena to Episcopal Migration Ministries, attached as exhibit 1. The Subpoena subjected Episcopal Migration Ministries to undue burden and expense. It was grossly overbroad and sought production of patently irrelevant information, prohibited by Federal Rule of Civil Procedure 45(d)(1) and (d)(3)(A)(iv). The categories of information sought by the Subpoena were not limited in any way and included information and communications that are not related to the present matter.

For example, the Subpoena's first paragraph sought all nonprivileged documents related in any way to the United States Refugee Resettlement Program. This necessarily included irrelevant information—not just information that was unrelated to the Syrian refuges whose resettlement gave rise to this action, but also information related to refugees being resettled in other states and from other countries. The same paragraph requested security-related documents, which are not provided to Episcopal Migration Ministries and not kept in its records.

The remaining paragraphs sought communications between Episcopal Migration Ministries and others. These requests similarly lacked any appropriate limitation on subject matter or scope. They encompassed communications containing confidential medical and personal information about refugees who have been or are being assisted by Episcopal Migration Ministries. These categories also

included communications related to irrelevant organizational information related to funding, staffing, budget, and the like.

There can be no question that the Subpoena was overbroad and unduly burdensome. It requested four years' worth of information pertaining to nearly every aspect of Episcopal Migration Ministries' organization and communications. In addition to the obvious irrelevance of the information sought, Episcopal Migration Ministries cannot be expected to bear the expense required to comply with these burdensome and overreaching demands, particularly because the organization was and is not a party to this lawsuit. Nonparty status is a significant factor routinely considered when courts weigh whether a subpoena constituted an undue burden.

The State's separate discovery requests to Exodus and Episcopal Migration Ministries included overlapping categories. Any discoverable and relevant information should have been sought directly from Exodus. Courts generally have been unwilling to subject nonparties to onerous discovery obligations when the information can be obtained from a party.

In addition, Section 222(f) of the Immigration and Nationality Act provides that records of the Department of State relating to the issuance or refusal of visas or permits to enter the United States are confidential. 8 U.S. Code § 1202(f). The Subpoena was so broad that it included any documents falling under that definition; those records were shielded as confidential under Section 222(f) of the Immigration and Nationality Act.

The Subpoena also violated the geographic limits specified in Federal Rule of Civil Procedure 45(c)(2)(A). The Subpoena, which was mailed to Episcopal Migration Ministries' office in New York, New York, commanded production of the records requested at the Office of the Attorney General in Indianapolis, Indiana.

Episcopal Migration Ministries served its objections to the Subpoena on December 18, 2015, which is attached as exhibit 2. This was just seven days after the Subpoena was issued—well within the fourteen-day window Rule 45(d)(2)(B) allows a person to object. Episcopal Migration Ministries also made clear that it would seek attorney fees and costs for responding to the Subpoena.

Counsel for Episcopal Migration Ministries and for the State discussed the Subpoena on December 28, 2015. During that phone call, the State agreed to a narrowed scope of requests. Counsel for Episcopal Migration Ministries sent a letter dated January 14, 2016, attached as exhibit 3. That letter confirmed the narrow scope, restated objections that still applied, and specified the extent to which Episcopal Migration Ministries would provide documents in response to each demand. Episcopal Migration Ministries provided very little.

Even so narrowed, the Subpoena requested documents that were unduly burdensome to provide and confidential. For example, multiple categories included documents available from Exodus or even in the State's own records. Episcopal Migration Ministries refused to produce communications between itself and Exodus or between itself and the State. It also refused to produce grant proposals and related submissions to grant-makers for competitive funding, which contain proprietary and confidential information. The letter also made clear that Episcopal Migration Ministries reserved the right to further object to the Subpoena.

The State responded with a letter maintaining that Episcopal Migration Ministries "is obligated to produce all documents responsive to the subpoena." The letter is dated January 26, 2016, and is attached as exhibit 4. The letter sought more information about the documents related to grant proposals.

Episcopal Migration Ministries produced the documents it signaled in its earlier letter. In its cover letter, it answered the State's questions about the withheld documents and requested the State to pay fees incurred in responding to

the Subpoena. That letter is dated January 29, 2016, and is attached as exhibit 5. On April 1, 2016, Episcopal Migration Ministries repeated its demand in a letter attached as exhibit 6. The State refused the demand in a letter dated April 4, 2016, which is attached as exhibit 7.

## ARGUMENT

The Subpoena sought confidential and federally protected information. Additionally, it clearly violated the geographic limits specified in Federal Rule of Civil Procedure 45(c)(2)(A) and subjected Episcopal Migration Ministries to undue burden and expense, seeking irrelevant information through overbroad requests. As a nonparty with no power to control the scope of discovery, Episcopal Migration Ministries should not be forced to incur significant expense to fund the State's litigation.

The Subpoena sought confidential and federally protected information. Additionally, it clearly violated the geographic limits specified in Federal Rule of Civil Procedure 45(c)(2)(A) and subjected Episcopal Migration Ministries to undue burden and expense, seeking irrelevant information through overbroad requests. As a nonparty with no power to control the scope of discovery, Episcopal Migration Ministries should not be forced to incur significant expense to fund the State's litigation.

Rule 45 makes cost-shifting mandatory in instances involving a nonparty. *Linder v. Calero-Portocarrer*, 251 F.3d 178, 182 (D.C. Cir. 2001); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). The only relevant considerations under Rule 45 are (1) "whether the subpoena imposes expenses on the non-party," and (2) "whether those expenses are 'significant.'" *Linder*, 251 F.3d at 182 (quoted approvingly by *Legal Voice*, 738 F.3d at 1184). In other words, "Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal Voice*, 738 F.3d at 1184. Only

6

this requirement could "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* (quoting Fed. R. Civ. P. 45(d)(2)(B)(ii). The rule provides no exceptions.

There can be no question that the Subpoena imposed significant expenses on Episcopal Migration Ministries. The not-for-profit operates on a limited budget. The organization's staff and in-house and outside counsel spent substantial amounts of time reviewing the Subpoena, potentially responsive materials, governing laws and policies, and preparing objections and responses. As a result, the expenses incurred in responding to the subpoena are significant, as demonstrated by the fees and costs of over $11,000 contained in the invoice attached as exhibit 8.

Although the Court has some discretion in determining what amount is "significant," Episcopal Migration Ministries' expenses fall well within the range to meet this requirement, particularly for a nonprofit like the settlement agency. *See, e.g., Linder*, 251 F.3d at 182 (noting that $9,000 could justify cost-shifting). In fact, the Ninth Circuit in *Linder* reversed the district court's denial of cost shifting where it had "no trouble concluding that $20,000 is 'significant.'" *Legal Voice*, 738 F.3d at 1185.

Historically, courts reviewed the following in deciding whether to award costs to a nonparty: "(1) the scope of the discovery; (2) the invasiveness of the request; (3) the extent to which the producing party must separate responsive information from privileged or irrelevant material; and (4) the reasonableness of the costs of production." *United States v. Columbia Broadcasting System, Inc.* 666 F.2d 364, 371 n.9 (9th Cir. 1982). Other considerations include the following: "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance." *In Re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992).

Although the 1991 amendments to the Federal Rules of Civil Procedure focused courts on the more compact two-step analysis articulated in *Linder*, to the extent the Court looks to the older considerations, they all also weigh in favor of cost-shifting. *See United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 534–36 (C.D. Cal. 2014). For example, the discovery sought was broader than the rules permit. It sought confidential, personal, and sensitive information that required Episcopal Migration Ministries to separate responsive and privileged or irrelevant material. Much of what the State requested was just as easily sought from Exodus or even found in the public domain. That placed an undue burden on Episcopal Migration Ministries. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena where discover was "obtainable from a source more direct, convenient, and less burdensome") (citing Fed. R. Civ. P. 26(b)(2)(C)).

A nonprofit, Episcopal Migration Ministries cannot "more readily bear" the expense imposed on it by the State. While Episcopal Migration Ministries certainly applauds Exodus in its efforts to overturn the State's illegal actions, that proper rooting interest is no justification to impose costly discovery on it, which draws scarce dollars away from Episcopal Migration Ministries' capacity to accomplish its core mission. There is no "public interest" in allowing the State to engage in overbroad, unnecessary discovery in fruitless support of its patently unlawful activities. Finally, the amount of response costs is reasonable; the State has raised no objection or issue as to the amount of the modest but significant sum expended by Episcopal Migration Ministries in response to the State's Subpoena.

In its letter dated April 4, 2016, the State asserts that the caselaw supporting Episcopal Migration Ministries' demand is inapposite because the settlement agency did not move to quash the Subpoena. Ex. 7. But Rule 45 does not require court adoption of every expression of resistance as a prerequisite. It does, however,

require the Court to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."

Requiring an order on a motion to quash or to compel would add nothing to the purpose of cost-shifting in this situation. Requiring a nonparty to move to quash or to hold out until the commanding party moves to compel would lead to increased discovery disputes, and the cost of litigation and time spent in the process would substantially increase. Instead, courts should minimize the need for court intervention while still protecting nonparties, especially those without vast resources for litigation.

In clearly objecting and indicating its intent to seek fees but then providing much more limited documents and renewing its fee demand, Episcopal Migration Ministries took a practical and efficient path. While it consistently maintained its intent to seek fees, it produced materials that the State had some concrete claim to discover. It would be unfair to require Episcopal Migration Ministries to foot the bill for its response, which assisted the State in pursuing its defense, simply because the agency didn't resist more expensively.

The State refused to pay any of the demanded fees because it maintains that before an obligation to do so can arise, either the requesting party must move to compel production or the nonparty must move to quash the subpoena. Ex. 7 at 1. It cites *Angell v. Kelly*, 234 F.R.D. 135, 139 (M.D. N.C. 2006), a discovery order issued by a United States Magistrate Judge, to support this position. Even if the order were mandatory authority, it would not be controlling. The nonparty in that case was a law firm that represented one of the two companies that combined in a merger that went bad and led to the lawsuit. *Kelly*, 234 F.R.D. at 137. Substantial involvement in the underlying transaction weighs heavily against reimbursement. *See First Am. Corp. v. Price Waterhouse LLP*, 184 F.R.D. 234, 242 (S.D. N.Y. 1998) ("Where a nonparty was 'substantially involved in the underlying transaction and

9

could have anticipated that [the failed transaction would] reasonably spawn some litigation," expenses should not be awarded.") (quoting *Tutor-Saliba Corp. v. United States*, 32 Fed. Cl. 609, 610 n.5 (1995)). Episcopal Migration Ministries had no anticipation it would be dragged into federal litigation by Indiana's illegal efforts to obstruct resettlement of Syrian refugees.

Courts have ordered reimbursement for nonparty responses without court compulsion. Indeed, one court commended a responding nonparty for taking the "practical and efficient" course of producing documents and raising a request for payment of expenses through an objection "after or during the production process." *O'Cheskey v. Koehler (In re Am. Hous. Found.)*, Nos. 09-20232-RLJ-11, 11-02132, 12-02023, 2:12-cv-00222-J, 2013 Bankr. LEXIS 2268, *9–10 (U.S. Bankr. N.D. Tex. June 4, 2013). The court reasoned, "From the rule, it is apparent that reimbursable legal fees are simply a component of the expenses incurred by the non-party in complying with the dictates of the subpoena." *Id.* at *10. It further noted, "A non-party should not be forced to subsidize an unreasonable share of the costs associated with the pending litigation. Reimbursable fees include, for example, those fees incurred in connection with legal hurdles or impediments to the production." *Id.* (citing *In re Auto Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482 (E.D. Pa. 2005); *In re First Am.*, 184 F.R.D. 234)). And it made clear, "No motion to compel was filed here and no issue is before the Court concerning the propriety of the discovery." *Id.* at *8. *See also United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 534 (C.D. Cal. 2014) (court left open the possibility of cost-shifting even after parties agreed discovery's scope, deciding that it would entertain a motion for fees at a later date).

## REQUEST FOR RELIEF

Episcopal Migration Ministries respectfully requests the Court to order the State to reimburse all of the costs and fees Episcopal Migration Ministries incurred because the State imposed discovery on it, including the costs of this motion.

Respectfully submitted,

/s/ *Josh S. Tatum*
George M. Plews (No. 6274-49)
gplews@psrb.com
Josh S. Tatum (No. 28089-49)
jtatum@psrb.com
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN 46202-2415
Phone: (317) 637-0700
Fax: (317) 637-0710

Attorneys for Nonparty Episcopal Migration Ministries

## CERTIFICATE OF SERVICE

I certify that a copy of this was filed electronically in this Court on June 1, 2016. The parties may access this filing through the Court's electronic filing system, and notice of this filing will be sent to the following parties by operation of the Court's electronic filing system:

Kenneth J. Falk
Gavin M. Rose
Jan P. Mensz
A.C.L.U. of Indiana

Judy Rabinovitz
Omar Jadwat
Cecilia Wang
American Civil Liberties Union Foundation

Thomas M. Fisher
Patricia Erdmann
Heather Hagan McVeigh
Jefferson S. Garn
Lara Langeneckert
Jonathan Sichtermann
Office of the Attorney General

/s/ *Josh S. Tatum*
Josh S. Tatum