UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

**Exodus Refugee Immigration, Inc.,**          No. 1:15-cv-01858-TWP-DKL

    Plaintiff,

        v.

**Mike Pence,** in his official capacity as
Governor of the State of Indiana, and
**John Wernert,** in his official capacity as
the Secretary of the Indiana Family and
Social Services Administration**,**

    Defendants.

# Episcopal Migration Ministries' Reply Supporting Its Petition for Fees

The State asks the Court to let it impose costs on nonparty Episcopal Migration Ministries by unnecessarily dragging the nonprofit resettlement agency into this litigation without reimbursing the resulting costs. The State advocates a position that would punish any nonparty for cooperating with a party that serves an overbroad subpoena. This would be unfair and unwise. It is not the law.

    Court-ordered reimbursement to a nonparty for responding to a subpoena is not limited to situations in which the court intervenes. All a nonparty must do, as Episcopal Migration Ministries did here, is notify the requesting party that it reserves the right to seek attorney fees.

    Finally, contrary to the State's assertion, the fees incurred by Episcopal Migration Ministries in this case are reasonable. The Court should reject the State's irrelevant cost-per-page approach and instead asses the fees in light of the overburdensome and improper scope of the State's subpoena, in addition to the

complicated nature of the work required to respond to the narrower scope of materials produced.

I. **Reimbursement is not dependent on a motion to quash or compel.**

The State does not contest that its subpoena was overbroad and defective. It does not contest that it imposed costs on a nonparty. It does not contest that Episcopal Migration Ministries' request meets the two-part test of *Linder v. Calero-Portocarrero*, 251 F.3d 178, 180 (D.C. Cir. 2001) ((1) "whether the subpoena imposes expenses on the non-party," and (2) "whether those expenses are 'significant'"), as well as the traditional criteria in older cases such as *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 371 n.9 (9th Cir. 1982) ("(1) the scope of the discovery; (2) the invasiveness of the request; (3) the extent to which the producing party must separate responsive information from privileged or irrelevant material; and (4) the reasonableness of the costs of production") and *In Re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) ("(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance"). Instead, the State attempts to avoid the costs it imposed by claiming that Episcopal Migration Ministries should have pursued the more inefficient and expensive course of seeking intervention by the Court rather than producing some documents. This is not the law, and it would be unfair and inefficient to require such court intervention as a prerequisite to protecting nonparties from such costs.

Rule 45 mandates the Court to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii); *see Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). Contrary to the State's assertion, this responsibility is not limited to cases in which

a request for court intervention is filed. As another court has stated, "requiring a court order to award costs creates a perverse incentive to bring all discovery disputes to the court, needlessly multiplying litigation." *Spears v. First Am. eAppraiseIT*, No. 5-08-CV-00868-RMW, 2014 U.S. Dist. LEXIS 169944, *6 (N.D. Cal. Dec. 8, 2014). Instead, "a sounder policy is to encourage parties to meet and confer and come to an agreed resolution of discovery disputes." *Id.*

The other cases cited by the State, unlike *Spears*, do not address this question. *See* ECF No. 96, 4–5 (citing *Legal Voice*, 738 F.3d at 1181, 1184; *Linder*, 251 F.3d at 180). *Legal Voice* and *Linder* both involved court orders following motions to compel. *See Spears*, 2014 U.S. Dist. LEXIS 169944 at *8 (*Legal Voice* did not address the issue of cost shifting without a court order. … *Legal Voice* leaves open the issue of cost shifting in the absence of a court order.") As a result, these cases do not support the State's claim.

## II. Episcopal Migration Ministries gave sufficient notice that it would seek fees.

Courts have allowed reimbursement where a nonparty reserves its right to seek attorney fees as part of negotiations that avoid court intervention. *E.g.*, *Spears*, 2014 U.S. Dist. LEXIS 169944 at *9; *N. Am. Rescue Prods.*, 2009 U.S. Dist. LEXIS 118316; *Angell v. Kelly*, 234 F.R.D. 135, 138 (M.D.N.C. 2006) (citing *Angell v. Shawmut Bank Conn. Nat'l Ass'n*, 153 F.R.D. 585, 590 (M.D.N.C. 1994)).

In *Spears* the nonparty voluntarily complied with a subpoena from the plaintiff after negotiating a reduced production. *Id.* at *10 n.2. The nonparty took certain steps that it argued preserved its right to seek reimbursement. First, it included boilerplate language in its objection that claimed the requests were "unduly burdensome." *Id.* at *11. Second, it asked whether plaintiffs would provide reimbursement for incurred costs. *Id.* at *12. Third, it included a footnote in its

3

motion to quash the larger subpoena before any negotiation in which the nonparty asserted it would be "entitled to 'reasonable compensation.'" *Id.* at *13. But none of the documents submitted to the court showed any condition on the responses on the right to seek reimbursement. *Id.* at *11.

Unlike the nonparty in *Spears*, Episcopal Migration Ministries consistently indicated its intent to seek fees. In its initial objection letter, Episcopal Migration Ministries notified the State that the resettlement agency would move to quash the subpoena and "seek its attorney fees and costs" *if the subpoena were not withdrawn*. ECF No. 95-2, 1. The subpoena was *never* withdrawn; the State therefore was on notice that Episcopal Migration Ministries would seek its fees. Episcopal Migration Ministries then further preserved these rights by repeating, as negotiations continued, that it "reserves the right to move to quash the Subpoena," which includes the right to fees even under the State's unlawfully narrow construction of Rule 45. ECF No. 95-3, 1.

Finally, and dispositively, Episcopal Migration Ministries repeated its demand and included an actual invoice in the letter dated January 29, 2016—the letter with which it proffered the documents. ECF No. 96-1, 2–3. If the State was unwilling to pay the costs of production, it should not have continued to seek or accept the documents. But it did seek, accept, and presumably used them. The State did not object to or address Episcopal Migration Ministries' demand for payment, so Episcopal Migration Ministries followed up with a letter dated April 1, 2016, which repeated the demands and included further details. ECF No. 95-6.

The State thus was on notice that Episcopal Migration Ministries was maintaining its claim for costs before, as, and after it accepted the documents. It accepted the produced documents with a letter demanding payment for costs related to their production. Episcopal Migration Ministries' letter clearly stated that it

4

continued to maintain its "numerous valid objections and bases upon which to move to quash the Subpoena." ECF No. 95-5, 2. The letter continued,

> In conjunction with EMM's production in this regard, please find enclosed an invoice for EMM's efforts in responding to the Subpoena, including its efforts in identifying, assembling, and preparing the responsive materials for production. Please remit payment in that amount, made payable to Plews Shadley Racher & Braun LLP, at your earliest convenience.

ECF No. 95-5, 2–3.

The State did not return the documents or in any way object to this further demand for payment. Instead it accepted the documents. It accepted the terms by which the documents were produced. Even if the Court were to apply a narrower rule requiring agreement related to reimbursement, the exchange between the State and Episcopal Migration Ministries meets that criterion. *See* 13 Corbin on Contracts § 3.21 (2015) (explaining that silence plus additional circumstances, including the offeree's acceptance of control over property, may constitute acceptance and create a contract).

### III.   Episcopal Migration Ministries' fees are reasonable.

In its response brief the State asserts for the first time a claim that Episcopal Migration Ministries' fees are unreasonable. It asserts paying "attorneys $11,140 for producing 93 pages by email" is unreasonable. The reasonableness of attorney fees in responding to discovery is not properly assessed based on the number of pages finally produced or the method of production. The overbreadth of the initial request and the complexity of sorting through the issues and documents involved are more pertinent factors.

The 68.8 total hours worked in responding to the discovery requests includes work done in responding to an initial subpoena that violated the Federal Rules'

geographic limits, subjected a nonparty to undue burden and expense, was grossly overbroad, and sought production of patently irrelevant information. This resulted in a lot of work as the scope of the materials actually provided was negotiated and reviewed. The fees include all the necessary correspondence with Exodus Refugee Immigration, Inc. and its counsel. The work also includes correspondence between Episcopal Migration Ministries personnel and its counsel. And, of course, it includes work done to review materials for relevance and privilege, including work done to ensure Episcopal Migration Ministries complied with complex regulations governing personal information of immigrants and the protection of its own confidential information. In sum, the roughly 100 pages that Episcopal Migration Ministries produced do not tell the entire story.[1]

## REQUEST FOR RELIEF

Episcopal Migration Ministries respectfully requests the Court to order the State to reimburse all of the costs and fees Episcopal Migration Ministries incurred because the State imposed discovery on it, including the costs of this motion.[2]

---

[1] Should the Court deem necessary, Episcopal Migration Ministries is willing to submit more detailed invoices to the Court for in camera inspection.
[2] *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC), 2012 U.S. Dist. LEXIS 110824, *13–15, 2012 WL 4846522 (N.D. Cal. Aug. 7, 2012) (order granting Big Ten Conference fees for pursuing its motion for sanctions under Rule 45).

Respectfully submitted,

/s/ Josh S. Tatum
George M. Plews (No. 6274-49)
gplews@psrb.com
Josh S. Tatum (No. 28089-49)
jtatum@psrb.com
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN 46202-2415
Phone: (317) 637-0700
Fax: (317) 637-0710

Attorneys for Nonparty Episcopal Migration Ministries

## CERTIFICATE OF SERVICE

I certify that a copy of this was filed electronically in this Court on July 11, 2016. The parties may access this filing through the Court's electronic filing system, and notice of this filing will be sent to the following parties by operation of the Court's electronic filing system:

Kenneth J. Falk
Gavin M. Rose
Jan P. Mensz
A.C.L.U. of Indiana

Judy Rabinovitz
Omar Jadwat
Cecilia Wang
American Civil Liberties Union Foundation

Thomas M. Fisher
Patricia Erdmann
Heather Hagan McVeigh
Jefferson S. Garn
Lara Langeneckert
Jonathan Sichtermann
Office of the Attorney General


/s/ Josh S. Tatum
Josh S. Tatum