# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| EXODUS REFUGEE IMMIGRATION, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ERIC HOLCOMB, in his official capacity as ) <br> Governor of the State of Indiana, and ) <br> JENNIFER WALTHALL, in her official ) <br> capacity as the Secretary of the Indiana Family ) <br> and Social Services Administration, ) <br> ) <br> Defendants. ) | Case No. 1:15-cv-01858-TWP-DML |

## ORDER ON DEFENDANTS' MOTION TO STAY PROCEEDINGS

This matter is before the Court on the Defendant's Eric Holcomb, in his official capacity as Governor of the State of Indiana and Jennifer Walthall, in her official capacity as the Secretary of the Indiana Family and Social Services Administration (collectively the "State"), Motion to Stay. ([Filing No. 138](#)). The State has requested a stay of all proceedings, including the briefing on Plaintiff Exodus Refugee Immigration, Inc.'s ("Exodus") Motion for Summary Judgment ([Filing No. 136](#)), pending the United States Supreme Court's ("the Supreme Court") decision in *Donald J. Trump, et al v. International Refugee Assistance Project, et al.* (No. 16-1436). For the reasons set forth below, the State's Motion to Stay is **DENIED**.

## I. BACKGROUND

On November 16, 2015, then-Governor Mike Pence directed "all state agencies to suspend the resettlement of additional Syrian refugees in the State of Indiana pending assurances from the federal government that proper security measures have been achieved." ([Filing No. 1-1](#).) Refugees are eligible for social service assistance through the federal grants for up to five years

after their arrival in Indiana. The State later clarified that the Governor's directive would be enforced by refusing to allow federal monies that pass through Indiana to pay for social and employment services offered by local resettlement agencies, to the extent that those services are offered to Syrian refugees. The Governor stated his intent was to "deter local resettlement agencies and their affiliated national Voluntary Agencies from resettling Syrian refugees in Indiana until the United States can gather sufficient background information to make an educated assessment as to whether the refugees pose a security threat." (Filing No. 41 at 7.) This Court issued a preliminary injunction on February 29, 2016 ([Filing No. 70](#)), which was affirmed by a unanimous panel of the Seventh Circuit Court of Appeals on October 3, 2016. *See Exodus Refugee Immigration, Inc., v. Pence*, 838 F. 3d 902 (7th Cir. 2016).

On January 27, 2017, President Donald Trump issued an Executive Order titled, "Protecting the Nation from Foreign Terrorist Entry into the United States." This order imposed a 90-day suspension of entry into the United States by nationals from seven named countries, a 120-day suspension of the U.S. Refugee Admissions Program ("USRAP"), and an indefinite suspension of Syrian refugees. Exec. Order No. 13769, 82 Fed. Reg. 8,977 (Jan. 27, 2017). This order was revoked by an identically titled Executive Order on March 6, 2017. Exec. Order No. 13780, 82 Fed. Reg. 13,209 (Mar. 6, 2017), which imposed a 90-day suspension of entry into the United States by persons from six named countries and a 120-day suspension of the USRAP. The March 6, 2017 Executive Order is currently the subject of Supreme Court review. The Executive Order contained directives for a review of vetting of foreign nationals, a 120-day review of the USRAP, and a proposal for greater state involvement in refugee placement. The 90-day entry suspension and 120-day USRAP were enjoined by the Fourth and Ninth Circuits (collectively, the "travel ban cases"). *See Int'l Refugee Assistance Program v. Trump*, 857 F.3d 554 (4th Cir. 2017)

(staying the 90-day suspension); *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017) (staying both the 90-day suspension and the 120-day USRAP suspension). On September 24, 2017, President Trump issued a proclamation titled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats" ("the Proclamation"). Proclamation 9,645, 82 Fed. Reg. 45,161 (Sept. 24, 2017). The Proclamation specifies that entry of nationals from eight countries[1] is suspended indefinitely with an effective date of October 18, 2017. *Id.* at 45,171.

The Supreme Court granted *certiorari* of both travel ban cases and consolidated them for oral argument, which was to be held on October 10, 2017. After the September 25, 2017 Proclamation, the Supreme Court vacated the October, 10, 2017 hearing on the Executive Order and ordered the parties to file briefs by October 5, 2017, addressing whether, or to what extent, the Proclamation renders the cases moot. On October 10, 2017, the Supreme Court dismissed the Fourth Circuit case as moot without reaching the merits because the 90-day suspension had expired by its own terms. 2017 WL 4518553 *1 (No 16-436) (Oct. 10, 2017) ("appeal no longer presents a 'live case or controversy'") (citation omitted). On August 24, 2017, Exodus filed a Motion for Summary Judgment ([Filing No. 136](Filing No. 136)), thereby requesting that the preliminary injunction be made permanent. IN response, the State filed a Motion to Stay ([Filing No. 138](Filing No. 138)) proceedings pending the outcome of the Supreme Court's decision in *Trump v. International Refugee Assistance Project* (No. 16-1436) ("*IRAP*"). Exodus objects to a stay of the proceedings.

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

---

[1] The eight countries are Chad, Iran, Libya, North Korea, Syria, Venezuela, Yemen, and Somalia.

counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). District courts exercise discretion in deciding on a motion to stay weighing competing interests. *See id.* "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255. If a parallel action is before another federal district court, "the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Duplicative litigation may be established when "the issues have such an identity that a determination in one action leaves little or nothing to be determined on the other." *Smith v. S.E.C.,* 129 F.3d 356, 361 (6th Cir. 1997).

### III. DISCUSSION

Syria is one of the six named countries in the Executive Order that have been affected by the 90-day entry suspension. Additionally, the 120-day entry suspension of USRAP affects all refugees, including those from Syria. The State argues that Exodus's request for summary judgment on its previously granted preliminary injunction should be stayed until the Supreme Court's ruling in *IRAP* because that ruling will provide clarity on the resolution of the Executive Order and the reports it mandates will directly affect this case. ([Filing No. 139 at 6](#).) Exodus responds that *IRAP* will not settle a rule of law that has any bearing on this case because the injunction it seeks prohibits the State from withholding payments for the services it provides to Syrian refugees—an entirely distinct issue from the *IRAP* case before the Supreme Court.

The Court agrees that *IRAP* is unlikely to reach the merits of the present case. Further, the Supreme Court has already dismissed the companion case addressing solely the 90-day entry suspension injunction without reaching the merits of that case. It is conceivable that the Supreme

4

Court might also dismiss the case addressing the 120-day entry suspension of the USRAP injunction once that time has passed, which the State asserts is approximately October 24, 2017.

The State concedes that President Trump's authority to issue the Executive Order does not directly impact this case, but speculates that the parties will also delve into the justifications for the Executive Order which will include safety concerns over entry of nationals from the specified countries including Syria, and a provision that gives states greater control in refugee placement. The State contends that the consideration of the federal government's justifications regarding Syria will either prove or disprove the State's concerns about Syrian refugees. The State's argument on what the *IRAP* parties may argue before the Supreme Court is pure speculation, and has already been rendered irrelevant in part by the Supreme Court's dismissal of the 90-day entry suspension case without reaching the merits of that case.

In the State's reply, it relies on the September 24, 2017 Proclamation for its position that it is very likely Syrian refugees may be indefinitely suspended from entering the United States in the near future. This, the State argues, will render the present case moot since Exodus's cause of action relies on future entry of Syrian refugees. ([Filing No. 145 at 3](#).) The State also contends that the Proclamation will result in ongoing litigation that will likely make its way up to the Supreme Court again on an expedited timeline due to the fact that the Proclamation has already been enjoined from going into effect by the same district courts that enjoined the Executive Order. *Id.* at 3-4.

The Court is not persuaded by this argument. Although future refugees may be affected by an indefinite entry suspension because they would be permanently banned from entering the United States and thus not eligible for the grant, this would not render the case moot as hundreds of refugees currently reside in Indiana that are eligible for services through the grant for up to five years after their arrival. Exodus addressed this potential reality, "even if the future influx of Syrian

5

refugees to Indiana stopped immediately and permanently, it would not affect Exodus's pending summary-judgment motion." ([Filing No. 142 at 4](#).)  Further, the fact that the Proclamation's legality may be argued up to the Supreme Court is speculative.  The State argues that because the Proclamation authorizes an indefinite suspension on refugees of certain nationals, if or when this issue makes it up to the Supreme Court, the Supreme Court will have to issue a decision this time around because the suspensions are indefinite, instead of temporary like the 90-day and 120-day suspensions.

The State's argument on how the Proclamation impacts new developments is not compelling to warrant a stay.  Given the events that have happened thus far, it is also equally likely that a superseding presidential order will render the Proclamation moot. More importantly, as previously mentioned, the indefinite suspension of Syrian refugees would not affect the refugees that currently reside in Indiana that are entitled to the social services offered by the grant at issue in the present case.  Therefore, the State cannot establish duplicative litigation because *IRAP* nor any potential future Supreme Court case on the legality of the Proclamation will leave the action that the injunction seeks to prohibit unresolved.

The State also contends that it lacks facts and information that are critical for its opposition to Exodus's Motion for Summary Judgment because the United States is in the middle of an extensive review of immigration procedures, specifically related to the potential dangers due to the instability in Syria.  This argument is flawed for two reasons.  First, by the State's own admission, this information will be available once the reports from the 120-day review of USRAP, due October 24, 2017—today's date, are made available, or from other documents already appearing in the record.  Second, and more fundamentally, the State seeks to use Federal Rule of Civil Procedure 56(d) to discover additional facts gleaned from the reports and *IRAP*'s ruling;

however, "fact-finding is the basic responsibility of district courts rather than appellate courts." *Maine v. Taylor*, 477 U.S. 131, 144-45 (1986) (internal quotation and citation omitted).

In sum, the present case and *IRAP* would not result in duplicative litigation. *IRAP* considers whether the President's authority was intended to target Muslims in violation of the Establishment Clause, whereas the present case considers whether the State's national origin discrimination meets strict scrutiny. This case also involves a distinct issue that will not be resolved by the *IRAP* case whatsoever—the eligibility of Syrian refugees to receive social services made available through the refugee grant. The USRAP 120-day entry suspension and the validity of such focuses on the continued entry of refugees and does not affect the rights of refugees currently residing in the United States or Indiana for that matter.

This case does not present the rare circumstance where a litigant in one cause should be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both, because not only does the State seek to gather additional facts which arguably are already available, but *IRAP* will leave the crux of the preliminary injunction unresolved. The Proclamation's indefinite suspension on future Syrian refugees does not impact the refugees currently residing in Indiana that are entitled to the social services that the grant provides; rather, it may impact the number of Syrians who qualify for the grant, but this is not sufficient to delay the final disposition of the case for parties currently entitled to relief. Because there is no duplicative litigation weighing in favor of a stay and the Supreme Court is unlikely to reach the merits of the preliminary injunction at issue in this case as it relates to current Syrian refugees, the Court does not find a stay is warranted particularly given the Seventh Circuit's affirmance of the preliminary injunction in favor of Exodus.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the State's Motion to Stay this litigation pending resolution of *IRAP*. ([Filing No. 138.](#))  The State shall have **twenty-eight (28) days from the date of this Entry** to respond to Exodus's Motion for Summary Judgment.  The Court **DENIES** the State's request for a status conference.

**SO ORDERED.**

Date: 10/24/2017

*[Signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Jan P. Mensz
ACLU OF INDIANA
jmensz@aclu-in.org

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Cecillia D. Wang
ACLU FOUNDATION IMMIGRANTS' RIGHTS PROJECT
cwang@aclu.org

Omar C. Jadwat
ACLU FOUNDATION IMMIGRANTS' RIGHTS PROJECT
ojadwat@aclu.org

Judy Rabinovitz
ACLU FOUNDATION
jrabinovitz@aclu.org

Patricia Orloff Erdmann
OFFICE OF THE INDIANA ATTORNEY GENERAL
patricia.erdmann@atg.in.gov

Thomas M. Fisher
OFFICE OF THE INDIANA ATTORNEY GENERAL
tom.fisher@atg.in.gov

Lara K. Langeneckert
OFFICE OF THE INDIANA ATTORNEY GENERAL
lara.langeneckert@atg.in.gov

Winston Linn
OFFICE OF THE INDIANA ATTORNEY GENERAL
winston.lin@atg.in.gov

James C. Luh
U.S. DEPARTMENT OF JUSTICE
james.luh@usdoj.gov